Brown *vs.* Morison & Sullivan.

## BROWN *vs.* MORISON & SULLIVAN.

It is a principle of natural justice as well as Constitutional law, that no one can be lawfully deprived of *his property without his consent, or having compensation allowed* him by due course of law.

The Legislature possesses no power to divest legal or equitable rights previously vested.

The legal or equitable estate of a person who procures a building to be erected on premises in his possession, may be charged with the mechanics' lien, if that does not interfere with other paramount interests or duties.

The vested rights of third persons, who are neither parties nor privies to the contract between him and the mechanics cannot be prejudiced by their agreement.

Mechanics, like other persons, who contract, are bound to ascertain for themselves the nature of the interest they acquire.

Mechanics claiming liens may proceed by an ordinary suit, and have execution against the property charged, and then against the other effects of the debtor; or by sci. fa. which is strictly a proceeding *in rem.*

In the latter proceeding the plaintiff is bound to show that the property is chargeable with his lien.

Where A. agrees to sell land to B., takes his notes, with security, for the purchase money, (which remains unpaid,) and covenants to convey when they are paid, mechanics who erect a building for B. on the land, obtain no lien upon it.

No doubt A. retains no *equitable lien* on the land for the purchase money. He parted with that by taking notes with personal security. But this did not annul his rights under the covenant.

Still less could the mechanic obtain a lien, if, before his contract was made, B. had mortgaged the estate to C., his security, to save him harmless from his securitiship, and to secure debts due him, authorizing him, if compelled to pay the notes to A. to take a conveyance to himself.

C.'s defence, in such case, would be merely *equitable,* and not pleadable at law, in a suit to enforce the supposed lien.

THIS was a proceeding to enforce a mechanic's lien, under the the statute, determined in the Pulaski Circuit Court, in No-

vember, 1842, before the Hon. JOHN J. CLENDENIN, one of the circuit judges. On the 24th of November, 1840, Morrison & Sullivan filed, in the office of the clerk of that court, their account of work done and materials furnished by them as painters and glaziers, on a brick building in Little Rock, built by Edward Cole, showing a balance due them of $181 37½, with the proper affidavit, all in accordance with the statute. On the 30th of January, 1841, they filed their declaration against Cole, in indebitatus assumpsit, for work and labor done and materials furnished; and on the same day sued out a writ of *scire facias,* reciting the filing of their account, and describing the property, and also reciting that Cole had conveyed the property to Woodruff, and that it was then occupied by George H. Burnett, and requiring Cole, Woodruff and Burnett to appear and show cause why judgment should not be entered, and execution had against the property. This writ was executed on Woodruff and Burnett by reading, and on Cole by putting up a copy on the door of the building, according to the Statute.

In June, 1841, Woodruff filed his response. He stated that on the first day of December, 1838, Cole purchased of Jacob Brown the lot on which the building was afterwards erected, and for the purchase money, Cole as principal, and Woodruff as security, executed to Brown three bonds, of that date, one for $1000, due at three years, one for $1000, due at four years, and one for $2000 due at five years, with interest at 8 per cent, from due, and five bonds of the same date, one for $320 payable Dec. 1, 1839; one for $320 payable Dec. 1, 1840; one for $320 payable Dec. 1, 1841; one for $240 payable Dec. 1, 1842, and one for $160 payable Dec. 1, 1843; and that Brown then executed to Cole his covenant and bond, that he would convey the lot in fee simple, when the eight bonds should be paid according to their tenor and effect; which bond was duly acknowledged and recorded, and copies annexed.

The response further stated, that on the 13th of December, 1838, Cole having bought of Woodruff the establishment, good will, &c. of the Arkansas State Gazette, and having executed for the purchase money five bonds of that date, each for $1000, with legal interest from date, and payable at one, two, three, four and five years, from

Brown *vs.* Morison & Sullivan.

date, mortgaged the lot to Woodruff, to secure the payment of his bonds, and to indemnify him for his securityship; which mortgage was duly acknowledged and recorded, and a copy annexed. That on the third of October, 1840, Cole, being about to leave the State, executed his deed, reciting his debt to Woodruff, and Woodruff's securityship for him, and thereby assigned to him the bond and covenant for title, requiring Brown to make title to him, on payment of the consideration money: duly acknowledged and recorded, and copy annexed.

That on the same 3d of October, 1840, Cole executed another deed, authorizing Woodruff to lease the property and apply the rent to remove his encumbrances on it, and to effect insurance of it, and deduct the premium from the rent. Also acknowledged and recorded, and copy annexed.

That about the same day, Woodruff took possession, and leased, part to Burnett, and part to other persons: That Woodruff paid the first bond for $320, which had been repaid him by Cole: That he paid the second bond for $320, for which amount and interest Cole was still indebted to him: That Cole also still owed the whole consideration money for the Gazette, and he, Woodruff, expected to be compelled to pay Brown the residue of the consideration money for the lot; it being wholly unpaid, except the two bonds for $320 each, so paid by him.

The response admitted that Morrison and Sullivan had done certain work, but alleged that it was all begun after his mortgage had been executed and acknowledged; and that they had actual as well as constructive notice of the whole transaction; and prayed that the lien of Woodruff might be preferred.

The plaintiffs demurred to this response, assigning as cause of demurrer, that the whole answer showed no lien in favor of Woodruff, entitled to preference; that the mortgage was of an equitable interest only, and so of no avail; that the response showed that the building had been erected since the mortgage was executed; that the assignment of the bond for title could not interfere, because it was not shown to have been made before the lien accrued; that the deed authorizing Woodruff to lease could give no lien.

The demurrer was sustained, judgment by default entered against Cole and Burnett, against the former for damages to be assessed, and against Burnett, that whatever interest he might have in the building should be bound by the lien; and writ of enquiry ordered to the next term, and scire facias against Brown. At the next term Brown answered the sci. fa., and the plaintiffs demurred to his response. The damages were then assessed to $186 37½, and the jury also found it to be a lien on the building. Judgment was rendered for the amount, as a lien, and that execution should go against the property. This was in November, 1841. Execution issued on this judgment, which Woodruff and Brown moved at the next term, in March, 1842, to quash, because there was no final judgment from which they could appeal. Motion overruled, and exception.

In November, 1842, the demurrer to Brown's response was sustained, and he declining further to respond, judgment was rendered that the judgment against Cole be satisfied out of the property—that the plaintiffs recover of Woodruff and Brown respectively, the costs about their responses expended, and that the other costs be paid out of the property. The case came up on error.

There being several cases presenting the same points in all respects, they were argued here by *Ashley & Watkins*, for plaintiffs in error, and *Trapnall & Cocke*, and *Pike & Baldwin*, contra.

*By the Court,* Lacy, J. The decision of the several points raised by the transcript in this cause necessarily involves the true interpretation of the act of the Legislature giving liens to all mechanics, artisans, undertakers or persons who furnish materials for buildings. The first inquiry is, what kind of interest or estate is chargeable with such liens ? The first and sixth sections of the act charge the legal estate. The language of the statute is, that all mechanics, undertakers, and those who furnish materials for building under contract with the proprietor or owner of any real estate, shall have a lien or preference on such materials and the houses erected, in proportion to their respective claims. It is evident that the proprietor or owner of real estate, is he who possesses the fee. The fourteenth section enlarges

Brown *vs.* Morison & Sullivan.

the lien, and gives it against the occupants of the soil, and the land on which the buildings may be erected, and not exceeding two acres adjacent thereto. This section makes the possessory interest of the occupant chargeable with the lien by express terms. Now it is a principle of natural justice as well as constitutional law that no one can be lawfully deprived of his property without his consent, or having compensation allowed him by due course of law. The Legislature possesses no power to divest legal or equitable rights previously vested. The legal or equitable estate may be charged with the lien, provided that does not interfere with other paramount interests or duties. The vested rights of third persons, who are neither parties nor privies to the contract between the tenant in possession and mechanics, cannot be prejudiced or sported away by their agreement. To allow this would be to expose the whole estate to utter ruin or onerous burdens, that would materially impair its value. The law makes it the duty of all persons, who contract, to ascertain the nature and extent of the interest they acquire. This rule imposes no greater hardship or inconvenience on mechanics than on other individuals. He, who has the fee or is tenant in possession, can be compelled to exhibit his title to the premises on which he wishes to build, and even should he refuse, the records of the courts, which are always open for inspection and examination, will readily show it and all prior incumbrances with which the estate stands charged.

The mode by which this lien may be enforced, is two-fold: First, the party may bring an ordinary suit against the debtor, and after judgment, have execution against the property charged and then against his other effects: or secondly, he may proceed against the original debtor and against every other person owning or claiming possession of the property, by scire facias. If the plaintiff elects to prosecute his claim by scire facias (which is strictly a proceeding *in rem*) he is bound to show that the property is chargeable with his lien. The eighth section of the act is express upon this point. It enacts that there can be no valid judgment or execution, unless it be proved that the lien attaches to the property. The proceeding in the present instance (which is a suit by scire facias) clearly demonstrates that the legal estate to the lot of ground in dispute ever has been and still re-

mains with the original proprietor, Jacob Brown. On the 1st of December, 1838, he sold the premises, on which the lien is said to attach, to Edward Cole for several obligations of him as principal and William E. Woodruff as security, payable annually thereafter at distant dates and for the sums agreed on, and at the same time binding himself by covenant to convey the lot in fee to Cole, whenever the whole amount of the purchase money was paid. No part of the purchase money, except two small obligations for the accruing interest has ever been paid to Brown, by either Cole or Woodruff, nor has he ever executed a deed to either of them. It is certainly true that Brown has no equitable lien on the lot for the purchase money; for he parted with that lien by taking Cole's obligation with personal security. The authorities are full and conclusive on this point. *Stafford vs. Van Renselaer*, 9 *Cow.* 316. *Blight's heirs vs. Banks*, 6 *Monroe*, 199. *Brown vs. Gilman*, 4 *Wheat.* 255.

By parting with his equitable lien, he surely did not annul the rights he possessed by virtue of his covenant. These he retained, and his plea alleges they constitute a good bar to the action. The terms of his covenant, as well as its intendment, only bind him to convey upon the reception of the purchase money. This the agreement makes a precedent condition to the execution of the deed. A court of equity would not compel him to convey without decreeing that the purchase money be first paid him. Cole, by Brown's covenant, acquired an equitable interest in the lot coupled with the possession, which was capable of being converted into a legal estate by the fulfilment of his part of the agreement. This possessory interest he held subject to the legal estate, and Brown could, at any moment after his failure to pay the purchase money, have ousted him of the possession. But even this inchoate equitable estate he afterwards conveyed to Woodruff by mortgage bearing date the 13th of December, 1838. This conveyance purports to be made to secure Woodruff in the payment of large sums owing him by Cole, and to indemnify him against loss for his securityship to Brown. It recites Brown's covenant to Cole and authorizes Woodruff to have the deed executed to himself upon the payment of the purchase money. It passed all Cole's equitable interest to Woodruff, and it gave him a lien upon the *estate* with a preference

over all other claims subsequently acquired. Upon the execution of the mortgage, Cole had but an equity of an equity, or in other words, he had a right of redemption still remaining. Certainly our statute never contemplated charging this mere equity of redemption with a lien, that would defeat both the legal and equitable estate. Cole's possessory interest, while he occupied the premises, belonged to either Brown or Woodruff, as their respective claims might be asserted, and it was held for their benefit. Both the covenant and mortgage were duly acknowledged and recorded long anterior to Cole's agreement with Morrison and Sullivan to do the work on the building, on which the lien is now sought to be fixed; and the pleas, to which there is a general demurrer, aver that Morrison and Sullivan had an actual as well as constructive notice of Woodruff and Brown's title; and the plaintiffs no where offer to discharge these prior legal and equitable rights. If the view here taken be correct, Brown's plea constituted a good bar to the plaintiffs' action. The demurrer to it was improperly sustained. The defence set up by Woodruff was mere equitable matter and therefore not pleadable at law. The plaintiffs having elected to proceed by scire facias, were bound by the provisions of the statute to show that the property was rightly chargeable with their lien. This they have wholly failed to do, and their suit must be dismissed for want of a sufficient cause of action being shown on the trial.