Hopkins *et al. v.* Hudson *et al.*

Filed June 25, 1886.

---

No. 12,373.

## HOPKINS ET AL. *v.* HUDSON ET AL.

COAL MINES.—*Miner's Lien.*—*Interest to Which Lien Attaches.*—*Lessor and Lessee.*—*Statute Construed.*—The lien which section 5471, R. S. 1881, imposes in favor of persons employed in and about coal mines, applies only to such interest or estate as the person operating the mine has therein. It does not bind the property of a lessor.

From the Warrick Circuit Court.

*A. Gilchrist* and *C. A. DeBruler,* for appellants.

*W. M. Hoggatt* and *A. J. Rutledge,* for appellees.

MITCHELL, J.—William Hudson and fifty-five others joined in an action against Charles F. Hopkins and others, to recover certain sums due each of the plaintiffs from one Irby W. Poor, who was also a defendant, for work done in a coal mine of which Poor was the lessee. The specific relief asked against the appellants was the enforcement of an alleged lien on certain fixtures, machinery and other property belonging to them, and which had been leased and used by Poor in connection with the mine. The complaint alleged that the appellants owned certain real estate in Warrick county, and that they had leased a coal mine situate thereon to John D. Love and another, for a term of five years, from February 1st, 1880.

The lease, by various assignments, the complaint alleged, had been finally transferred to Poor, who operated the mine during the months of March and April, in the year 1884. During these months Poor became indebted to the several plaintiffs, who were his employees, working in the mines, in various sums, for the amount of which each, within sixty days from the time the work was done, gave notice, as the law required, of his intention to hold a lien on the coal mine, machinery, fixtures, and property of every description, which was used in and about the operating of the mines. A demurrer was overruled to the complaint.

Hopkins and the other appellants answered that they were the owners in fee of the land on which the mine was situate, and the absolute owners of all the property described in the complaint, and upon which the plaintiffs were seeking to enforce a lien. They averred that being so the owners they had leased the mine, machinery and fixtures, as alleged in the complaint, for a period of five years from February 1st, 1880, to February 1st, 1885, and that upon the expiration of the lease they had taken possession of the mine, and other property pertaining thereto as their own. The answer further avers that the appellants were the sole owners of the property sought to be affected by the alleged lien, since a date long

anterior to the claim of the plaintiffs; that the appellants never employed any of the plaintiffs to work for them; that they had nothing to do with the operating of the mine during the time the plaintiffs were employed therein; and that all the work on account of which the liens are claimed was rendered to Poor while he was operating the mine as lessee, and who had no other interest in it, or the machinery and fixtures, except as such lessee.

The court sustained a demurrer to this answer. Such further proceedings were had as resulted in a decree foreclosing the alleged lien on the machinery, etc.

The question for consideration arises upon the complaint and answer, and is this: Does the lien created by section 5471, R. S. 1881, in favor of persons employed in and about coal mines, attach to, and bind the estate of the owner of the mine, machinery, fixtures, etc., without regard to the fact that such owner may have leased the whole to another, who hired the employees, and from whom the wages sought to be made a lien are due, and who had, at the time the laborers were employed and the work done, no other interest in the property except that of a lessee? The appellants contend that it does not. The appellees have not favored us with a brief.

That part of the section above referred to which creates the lien is as follows:

"In all coal mines in this State, the miners and other persons employed and working in and about the mines, and the owners of the land and others interested in the rental or royalty on the coal mined therein, shall have a lien on said mine and all machinery and fixtures connected therewith, including scales, coal-bank cars, and everything used in and about the mine, for work and labor performed within two months, and the owner of the land, for royalty on coal taken out from under his land, for any length of time not exceeding two months," etc.

The section provides further, that such liens shall have

priority over all others, except that of the State for taxes, and that the lien for labor shall have priority over that for royalty.    It also makes provision for giving notice of an intention to hold a lien by filing a written notice in the recorder's office.

A consideration of this section discloses that a lien is imposed on the mine and all machinery and fixtures connected therewith, in favor of the owner of the land, and others interested in receiving rents or royalty on coal mined therein, as well as for the benefit of miners and other employees in and about the mines.    It is thus apparent that the Legislature contemplated, what is well known, that mines are in many, if not most, cases operated by others than those owning the lands.

The obvious purpose of the statute was, first, to afford security to miners and laborers in and about the mines, by giving them a lien for their wages, and next, by a like lien, to secure the land-owner and others interested for their rent and royalty in case the mine was operated by a lessee.    The lien of the one, in such a case, is as broad as that of the other, the difference being the miner's takes precedence. Both, however, have a lien upon the same property, that of the lessee.    Where the relative rights of the two are concerned in a case in which the land-owner has done that which the statute contemplated would or might be done, viz., leased the mine, it is not to be supposed the Legislature intended that the claim of the miner was not only to have precedence over that of the land-owner, but that the former might in addition subject the mine and such of the fixtures, machinery, etc., connected therewith, as belonged to the land-owner, to pay the debt of the lessee for wages.

An evident distinction is to be observed between those cases in which the mine is operated by the owner of the soil, machinery, fixtures, etc., and those in which, for a certain rent or royalty paid to the owner, another controls the operations of the mine.    The lien which the statute imposes in favor

of those working in and about the mines, must be under-stood as applying to such interest or estate as the person oper-ating the mine has therein.   *Forbes* v. *Gracey,* 94 U. S. 762.

The power to create a lien or charge upon property im-plies that the person whose contract, or dealings in reference thereto, subject it to the lien, has some right in or authority, express or implied, over the property, which enables him to bind it to the extent of his own interest, or authorizes him to do such acts as will bring the interest of the owner under a lien which the law imposes.

Thus the lien of a sub-contractor or material-man is up-held, upon the theory of an implied authority from the owner to the original contractor, to employ men and pur-chase materials for the structure, which is adding to the value of the owner's property.   The lien must be founded "on contract with the owner, either directly or indirectly; for it is only thus that one man can ever acquire a claim upon the property of another."   Phillips Mech. Liens, sections 58-65; Overton Liens, sections 538-564; *Brown* v. *Morison,* 5 Ark. 217 ; *Belding* v. *Cushing,* 1 Gray, 576 ; *Jacobs* v. *Knapp,* 50 N. H. 71.

It is upon this theory that the case of *Colter* v. *Frese,* 45 Ind. 96, and the cases which support it, proceed.   *Woodward* v. *McLaren,* 100 Ind. 586.   No analogy can be maintained between the case of a contractor who is supposed to possess implied authority to bind the property of the owner, to the extent of subjecting it to a lien imposed by law in favor of sub-contractors, and material-men, and that of a tenant or lessee who has no such authority.   In the one case the rela-tion warrants the inference of authority.   In the other no authority is implied.   The extent of the power or authority of the lessee is to bind such interest, and such only, as he pos-sesses in the property.   Unless an actual agency is established, the interest of the lessee alone is chargeable.   *Wilkerson* v. *Rust,* 57 Ind. 172, and cases cited ; *McCarty* v. *Burnet,* 84

Ind. 23; *Muldoon* v. *Pitt*, 54 N. Y. 269; Kneeland Mech. Liens, section 43.

The general principle is applicable here, that no one can confer a greater right to, or interest in, property than is possessed by himself, unless the principles of agency are involved, or unless the owner is in some way affected by the doctrine of estoppel. As we have seen, no agency is implied between lessor and lessee. No pretence is made that there was any concealment of the exact situation and ownership of the property, or that the appellees did not have full knowledge of the relation of their employer to the mine and other property upon which they are seeking to enforce a lien.

Meritorious as the law under consideration is, and liberal as its construction should be, it can not, within any recognized principles, receive such a construction as shall enable the employees of one who is known to have only a leasehold interest, to subject the lessor's property to sale for the debt of the lessee.

Such a construction would be alike disastrous to the interest of the land-owner upon whose land a mine is situate, and those interested in securing employment in mines. No prudent man would venture to lease a coal mine if it were understood that he thereby put his title to the mine, with whatever fixtures and machinery he may have equipped it with, in jeopardy for the wages of the employees who might engage to his lessee.

The security of miners and other workmen engaged in and about mines is confined to such interest as those in whose employ they are, or with whom they have some contract relation, direct or indirect, have in the mine, machinery, fixtures, and everything connected therewith, or which is used in and about the mine.

This requires that the miner have regard for the extent of the interest of the lessee, in whose employ he is, in the mine, fixtures, machinery, etc., seeing that the property of the lessor

is not bound for the wages of those who are in contract relation with the lessee alone.

It was error to overrule the demurrer to the complaint. Judgment reversed, with costs.

Filed June 25, 1886.