Warren *et al. v.* Sohn *et al.*

No. 12,909.

WARREN ET AL. *v.* SOHN ET AL.

MINES.—*Priority of Liens for Labor and Royalty.—Constitutionality of Statute Giving.*—Section 5471, R. S. 1881, giving miners and other persons employed in and about coal mines a prior lien on the mining property for work and labor, and land-owners a prior lien for royalty, is not in conflict with any provision of the Constitution of this State or of the United States.

SAME.—*Mortgage of Mining Property.—Rights of Mortgagee.—Notice.*—The provisions of section 5471, *supra,* enter into and become a part of mortgages executed upon coal mining property, and the mortgagees acquire liens subject to such statutory liens as may thereafter attach for work and labor performed and for royalty, and with notice that the latter liens will be prior and paramount.

SPECIAL FINDING.—*Exception to Conclusions of Law.—Admission as to Facts.*—An exception merely to the conclusions of law upon a special finding of facts admits that the facts have been correctly found.

From the Vanderburgh Superior Court.

*P. Maier, J. S. Buchanan, C. Buchanan* and *S. B. Vance,* for appellants.

*A. C. Tanner, W. W. Ireland, R. C. Wilkinson* and *W. H. Gudgel,* for appellees.

HOWK, J.—The only error whereon the appellants, defendants below, rely for the reversal of the judgment or decree herein is, that the trial court erred in its conclusions of law upon its special finding of facts.

The facts specially found by the court were substantially as follows:

1. At the times hereinafter mentioned, the "Evansville Echo Mining Company" was a corporation organized pursuant to the laws of Indiana, owning and operating a coal mine in Vanderburgh county, Indiana.

2. On the first day of December, 1883, said mining company executed a mortgage to William Warren, trustee, on the property described in said Warren's cross complaint

herein as follows, to wit: All the right, title and interest of said company in a certain leasehold, created by virtue of a lease executed by Herman Wessel on the 27th day of November, 1883, and recorded in lease-record No. 3, pages 352, 353 and 354, of Vanderburgh county, Indiana, as follows, to wit: Lots numbers 27 and 28 of Maxwell's subdivision of the south half of section 17, and the southeast quarter of the southeast quarter of section 18, township 6 south, range 10 west, Vanderburgh county, Indiana; also, the surface of two acres of said lot No. 27, for the shaft and improvements erected and to be erected thereon, said two acres being more particularly described as follows: (Description omitted). Also, all engines, boilers, machinery, tools, appliances, apparatus, buildings and fixtures on said leasehold, and all coal-cars, wagons, horses, mules, rights, credits, franchises and property of every kind and nature, held and owned by said company, to secure the payment of 100 bonds of $100 each, payable ten years from their date, with eight per cent. interest payable semi-annually, and coupons were attached for such interest, all payable at the First National Bank of Evansville. By the terms of said bonds, it was provided that, if the interest was not paid when due, then the principal should become due and payable. Said coupons falling due December 1st, 1885, are due and unpaid, although payment thereof has been duly demanded, and the principal thereof remains wholly unpaid. Said bonds are owned and held as follows: Adam Schmidt and Herman Rehrman, each 20 bonds; Herman Wessel and Margaret Mane, each 8 bonds; Koester and Korff, 38 bonds; and John Toranelle, 6 bonds.

3. On the 1st day of May, 1885, said mining company executed a second mortgage on the same property hereinbefore described to Koester and Korff to secure the payment of a promissory note of that date, for the sum of $6,738, executed by said company and made payable to the order of said Koester and Korff one year after date, with seven per cent interest payable semi-annually, and, if not paid within

thirty days after due, the principal to become due and payable, the amount of the note to bear interest from April 1st, 1885, waiving relief from valuation or appraisement laws, and providing for attorneys' fees. Said note and the interest payable December 1st, 1885, remain due and wholly unpaid, amounting, principal and interest, to the sum of $7,052, and $352 as an attorney's fee, the total sum being $7,404.

4. On the 9th day of July, 1885, Clara Weigel purchased for a valuable consideration and became the owner of 100 shares of the capital stock of said mining company, and remains at this time the owner and holder thereof. This finding shall in no wise prejudice the right of said Clara Weigel in any litigation which may hereafter arise between her and Koester and Korff, or their assigns.

5. During the months of October and November, 1885, the following named miners and other persons, employed and working in and about the coal mine, performed work and labor in and about the mine of said company, situate on the real estate hereinbefore described, and duly filed, in the proper office, notice of their intention to hold a lien for the several amounts due them, and performed all the acts required by section 5471, R. S. 1881, to acquire a lien on the mine, machinery, fixtures, etc., of said mine, for the payment of said amounts due them as aforesaid. No part of said amounts has been paid; and the names and amounts due are as follows, to wit: Benjamin Sohn, $76.50. (Here follow the names of forty-six other persons, which, with the sums set opposite their respective names, varying in amount from $101 to $1.03, we omit.)

6. The following persons performed work and labor, in and about said mine, of the following kind, to wit: By hauling coal from said coal mine to consumers thereof in the neighborhood, part of them using wagons belonging to said mining company, but all of them using their own horses to draw the same; said labor was performed within two months, and due notice of intention to hold lien was filed in the

proper office, and said debts remain unpaid, as follows: John Stotefer, $12.82; Henry Korff, $20.49; John C. Stubbs, $26.25, and John Hitch, $12.75.

7. Kratz Bros. performed work and labor, in and about said mine, of the following kind, to wit: They removed a pump from said mine and made repairs thereto at their foundry, and replaced and fastened the pump so repaired into the mine, for which there is due them the sum of $109.70; and said repairs were made within two months, and for the same they gave due notice of their intention to hold a lien, and recorded the same in the proper office, under the statute mentioned.

8. The following persons were the owners of the land from and under which said mining company took out coal within two months, and gave notice of their intention to hold a lien therefor, and procured the same to be duly recorded in the proper office, and the royalty due the said parties, which remains wholly unpaid, is as follows: Henry Wessel, $47.34, and Clara Weigel, $74.96.

9. Ten per cent. is a reasonable attorney's fee due said claimants for the several claims described in the *fifth, sixth, seventh* and *eighth* findings above written.

Upon the foregoing facts, the court stated its conclusions of law as follows:

"1. Benjamin Sohn and the persons described in the *fifth, sixth* and *seventh* findings of fact, as above, have and hold the first and paramount lien on the said coal mine, and all machinery and fixtures connected therewith, including scales, coal bank cars and everything used in and about said mine.

"2. The owners of the land described in the *eighth* finding of fact, as above, have a lien on the same property for the amounts due them as therein mentioned, but said lien is inferior to the claims of Benjamin Sohn *et al.*

"3. The persons described as bond holders, in the *second* finding of facts, are entitled to a lien on the mortgaged property for the payment of their debts, but the said lien is sub-

ject and inferior to the lien of the mining and royalty claims above described.

" 4. The mortgagees Koester and Korff are entitled to a lien on the mortgaged property for the mortgage debt above described in the *third* finding of facts, but the said lien is subject and inferior to the lien of said bond holders, above mentioned.

" 5, And the court further finds, that all the said lien holders are entitled to personal judgments against the said mining company for the amounts due them, and to a sale of the property above described, as subject to their liens, for the satisfaction of their claims, the proceeds of the sale, after the payment of the costs of sale and of these actions, to be applied to said debts in the order declared herein.

(Signed)        "AZRO DYER, Judge."

Over appellants' exceptions to its conclusions of law, the court rendered its final judgment and decree thereon and in accordance therewith. This appeal is jointly prosecuted, and errors are jointly assigned here, by Warren, trustee, by the holders of the bonds issued by the mining company, and by the junior mortgage creditors, Koester and Korff.

It is manifest, we think, from the conclusions of law herein, that they are and must be rested upon the trial court's construction of the provisions of section 5471, *supra*, in force since May 1st, 1879. This section, so far as applicable to the case now under consideration, reads as follows :

" In all coal mines in this State, the miners and other persons employed and working in and about the mines, and the owners of the land and others interested in the rental or royalty on the coal mined therein, shall have a lien on said mine and all machinery and fixtures connected therewith, including scales, coal bank cars, and everything used in and about the mine, for work and labor performed within two months, and the owner of the land, for royalty on coal taken out from under his land, for any length of time not exceeding two months; and such liens shall be paramount to and

have priority over all other liens, except the lien of the State for taxes; and such liens shall have priority, as against each other, in the order in which they accrued, and for labor over that for royalty on coal."

The trial court's conclusions of law, upon the facts specially found herein, it will be observed, are in strict harmony with the exact letter of the statutory provisions above quoted; and, therefore, there can be no error in such conclusions of law, unless it can be correctly said that such statutory provisions contravene the fundamental laws of the land, Federal or State, and are unconstitutional, invalid and void. Appellants are in no condition to call in question here any of the facts specially found by the court; for it is settled by all our decisions that, by their exception to the conclusions of law and the error predicated thereon, they admit that the facts of the case have been fully and correctly found by the court. *Robinson* v. *Snyder*, 74 Ind. 110; *Fairbanks* v. *Meyers*, 98 Ind. 92; *Bass* v. *Elliott*, 105 Ind. 517; *Wynn* v. *Troy*, 109 Ind. 250.

It will be observed further, that there is no controversy here between the labor creditors and the royalty creditors of the mining company, as against each other, upon the question of the priority of their respective liens. All these creditors are content, so far as the record shows, with the court's conclusions of law, or, at least, they make no complaint here of any of such conclusions. Appellants, as we have seen, were mortgage creditors of the mining company, and the liens of their mortgages upon its mining property, as found by the court, attached thereto some time before and were in force at the time the statutory liens of the appellees, for their labor or royalty, as found by the court, had attached to such property. It is contended by appellants' counsel, that to interpret, construe and apply the statutory provisions above quoted, according to their literal import, to the matters in controversy herein, as the trial court manifestly did, was clearly erroneous, in that the action and decision of the

court in the premises resulted in divesting the mortgage liens of the appellants which ought* to have been allowed priority over the statutory liens of appellees, under the facts and circumstances of this case as found by the court. Counsel claim that the mortgage creditors in this case have liens upon the property of the mining corporation older than, and prior in point of right and equity to, the statutory liens of appellees, for labor or royalty, upon such property, which accrued and attached thereto subsequently to the execution of the mortgages to the appellants herein.

It is a mistake in the use of words, we think, to say that the trial court's conclusions of law herein, in favor of appellees, divested the mortgage liens of the appellants. On the contrary, it may be fairly said that appellants acquired their mortgage liens on the property of the mining company with knowledge of the uses and purposes to which such property was applied by its corporate owner, and with notice that, under the statutory provisions above quoted, the mortgaged property was liable to be subjected to after-acquired liens for labor or royalty, which liens would be "paramount to and have priority over" their mortgage liens. The corporate name of the mortgagor, and the character and description of the mortgaged property, were such as clearly indicated to the mortgagees, and those claiming under them, that such property was intended to be used, and could only be used by its owner, in its coal mines in this State, for the purposes of mining coal. The mortgage to Warren, trustee, under which the bond holders claimed, and the mortgage to Koester and Korff were both executed by the mining corporation, as shown by the court's special finding of facts, more than four years after the statutory provisions above quoted took effect and were in force. Under repeated decisions of this court it must be held, therefore, that these statutory provisions entered into and formed a part of such mortgages, and that appellants acquired their mortgage liens on the mortgaged property subject to such statutory liens as

might thereafter, in the vicissitudes of the mortgagor's busi-
ness, attach to such property for work and labor performed,
or for royalty, and with notice that the latter liens would,
under the statute, " be paramount to and have priority over "
their mortgage liens. *Bryson* v. *McCreary*, 102 Ind. 1;
*Edwards* v. *Johnson*, 105 Ind. 594; *Long* v. *Straus*, 107
Ind. 94; *Owen School Tp.* v. *Hay*, 107 Ind. 351.

Appellants' counsel claim that the statutory provisions
heretofore quoted are in conflict with section 23 of article
1 of our State Constitution, which declares that " The Gen-
eral Assembly shall not grant to any citizen, or class of citi-
zens, privileges or immunities which, upon the same terms,
shall not equally belong to all citizens." Section 68, R. S.
1881. Counsel further claim that such statutory provisions
contravene so much of section 1 of article 14 of the Fed-
eral Constitution as declares in effect that no State shall
" deny to any person within its jurisdiction the equal protec-
tion of the laws." Section 39, R. S. 1881. We can not see,
however, that the statutory provisions quoted are in conflict
with either one of the declarations of our fundamental laws,
State or Federal, cited and relied upon by appellants' coun-
sel. Certainly it can not be said, with any degree of legal
accuracy, that these statutory provisions deny to any person
within the jurisdiction of this State, in any manner or to
any extent, the equal protection of the laws. Nor can it be
correctly said, we think, that the General Assembly, in or
by the enactment of such statutory provisions, has granted
to any citizen, or class of citizens, privileges or immunities
which, upon the same terms, do not equally belong to all
citizens. We do not doubt that if appellants, or any one or
more of them, had performed work and labor in and about
the mortgagor's coal mines, they might have acquired liens,
under the statutory provisions quoted, in the same manner
and upon the same terms as the appellees acquired their liens,
and of equal priority therewith. As applied to the facts of
this case, as found by the trial court, we are of opinion that

the statutory provisions above quoted are not repugnant to or in conflict with any provision of our fundamental laws, State or Federal, and are a constitutional and valid expression of the legislative will upon the subject-matter of such statutory provisions.

As we have already said, the trial court manifestly rested its conclusions of law upon these statutory provisions according to their literal import; and in this, we think, upon the facts of this case as specially found by the court, there was no error. Whether the facts of the case were, or were not, correctly found by the trial court, are questions not presented by the record now before us, and, therefore, they are not considered. We have found no error in such record which authorizes or requires the reversal of the judgment.

The judgment is affirmed, with costs.

