## PIERCE ET AL. v. BLAIR ET AL.

[No. 24,968.   Filed June 23, 1925.   Modified and rehearing denied November 18, 1925.]

1. MINES AND MINERALS.—*Coal miners, employed by purchaser of mine on conditional sale contract which stipulated that one-half of gross proceeds should be paid to vendor, entitled to lien for wages superior to mortgage on mine given for money borrowed to make improvements and provide working capital.*— Coal miners, employed by the purchasers of a mine on a conditional sale contract which stipulated that one-half the gross proceeds of the operation of the mine should be paid to the vendor and that the amount thus paid should not be less than $2,500 per month, and the purchasers were entitled to a salary only out of the proceeds, were entitled to a lien for their wages superior to the lien of a mortgage on the mine, which recited that it was given for money borrowed to make improvements thereon and to provide working capital (*Hopkins* v. *Hudson*, 107 Ind. 191, distinguished). p. 717.

2. APPEAL.—*Opinion of appellate tribunal must be restricted to the facts of case before the court, and a decision is authority only to that extent.*—The language of an opinion must be restricted to the facts of the case then before the court, and a decision is authority only to that extent; what is said by way of reasoning and illustration in reaching the conclusion announced is not authority. p. 720.

From Vanderburgh Superior Court; *Edgar Durre,* Judge.

Action by George Pierce and others against John Blair and others, wherein other parties, on their applications, were made defendants and filed cross-complaints. From personal judgments for the plaintiff and others but denying them liens, they appealed to the Appellate Court. [Transferred to the Supreme Court under §1357 Burns 1926, §1394 Burns 1914; Acts 1901 p. 565, §10.] *Reversed in part and affirmed in part.*

*U. W. Youngblood, M. R. Tweedy* and *Phillip Lutz, Jr.,* for appellants.

*John D. Welman, Phelps F. Darby* and *Daniel H. Orthmeyer,* for appellees.

EWBANK, J.—This was an action by the appellant George Pierce to foreclose an alleged lien on a coal mine for wages due him for labor performed in digging coal. Others claiming liens on the same property were made defendants and filed cross-complaints asking the foreclosure of their alleged liens, some for wages earned while working as miners, others for materials furnished, a judgment creditor of a former owner of the mine to enforce the lien of his judgment for compensation awarded by the Industrial Board, and appellee City National Bank of Evansville, as trustee for certain bondholders, to foreclose a mortgage executed five years before by the Possum Ridge Coal Company, which then owned the mine but has since conveyed it, and no longer has any interest in it.

The court appointed a receiver and ordered him to sell the property free from all liens, the decree providing that the liens held by all parties to the action, if any such should be finally established, should attach to the funds derived from the sale.

The trial court found for each of the miners and materialmen as against Louis E. Fricke and John H. Blair, who had incurred the debts sued for while engaged in operating the coal mine under a contract to purchase it by paying the agreed price in monthly installments, which they had entered into with the grantees of the Possum Ridge Coal Company; and it rendered personal judgments against Fricke and Blair for the several amounts found to be due. But it refused to declare a lien in their favor as against any interest in the coal mine except the interest of Fricke and Blair as purchasers under their sale contract which had been forfeited and was conceded to be without value.

The lien asserted by the judgment creditor was adjudged to be the first and superior lien for $1,185.20, which holding is not challenged here. And the court

found that there was due the City National Bank, as trustee, under said mortgage, the sum of $34,407.66, for which amount it was held to have a lien superior to the rights of all other parties to the action. As it is shown without dispute that the owners who executed the sale contract under which Fricke and Blair held possession of the mine and operated it at the time the debts for wages and materials were incurred, had taken title subject to the mortgage held by the bank, and that the mine property was sold by the receiver for only $16,450, which is not sufficient to pay the mortgage, after having discharged the costs of suit and satisfied the judgment lien, the question of prime importance is whether or not the lien of the miners for labor performed in digging coal is prior to the lien of the mortgage.

The several appellants claiming to hold liens for work done in digging coal from the mine filed motions for a new trial for the alleged reasons that the decision is not sustained by sufficient evidence and is contrary to law, and overruling each of these motions is assigned as error. The parties stipulated most of the facts, and as to many of the others, there was no conflict in the evidence. And adopting the evidence tending most strongly to sustain the finding on all points as to which there was any conflict, it fairly proved the following facts; that on September 25, 1917, the Possum Ridge Coal Company, a corporation, was the owner of coal leases on certain tracts of land comprising about 400 acres, on which were a mine shaft, tipple, engine house and other buildings, machinery, fixtures, equipment and personal property, which together constituted a coal mine; that on said date it executed a mortgage on said mine, including all of such property, to the appellee City National Bank, as trustee, to secure an issue of 750 bonds for $100 each in the total amount of $75,000,

by which the mortgagor covenanted to set aside and deposit with the trustee each year, as a sinking fund for the redemption of the bonds, a sum equal to ten per centum of the bonds that should remain outstanding and to pay all rents and royalties, taxes and assessments that might accrue, and not to suffer any mechanics' liens to attach to said premises; a right to redeem the bonds before maturity at 105 being reserved. That a preamble to this mortgage recited that the mortgagor was a corporation owning certain leases on coal lands from which it was authorized to dig coal and sell it, and that it was borrowing money to pay for the leases, make improvements, and provide working capital. That in 1920 said mortgagor, the Possum Ridge Coal Company, entered into a contract with appellees Louis E. Fricke and John H. Blair by which they were given possession and control of the coal leases, mine and mining property, in consideration of their indorsement of certain promissory notes and assumption of said mortgage debt, and their further agreement to pay $35,100, with interest at eight per cent. per annum, in monthly payments in proportion to the amount of coal mined and sold. That Fricke and Blair operated the mine as partners until March 1, 1921, when they transferred their interest to the Fricke and Blair Company, a corporation, which operated the mine for a year; but in March, 1922, the mine was shut down, and soon afterward a receiver was appointed for the Fricke and Blair Company, by whom its assets were sold, on September 16, 1922, to Jeppe Bertelsen and Lowry Bertelsen, appellees herein, who were father and son. That prior to said latter date, the Possum Ridge Coal Company had declared the Fricke and Blair sale contract forfeited for conditions broken; that on September 16, 1922, said coal company conveyed and assigned to Jeppe Bertelsen and Lowry Bertelsen the said mine, with all of said leases

and mining property, the receiver of the Fricke and Blair Company sold and conveyed to them all of its interest therein, and Louis E. Fricke and John H. Blair each conveyed all of their interest to the same purchasers, and that said Jeppe Bertelsen and Lowry Bertelsen thereupon, the same day, put said Fricke and Blair in possession of the mine and mining property under a contract hereinafter set out, and they proceeded to operate it, digging and marketing coal therefrom. That there were liens against the interest of the Fricke and Blair Company for labor amounting to $15,000, which had to be paid to induce the local miners to go back to work, and Fricke and Blair borrowed the money and paid these liens as part consideration for the contract under which they took possession, borrowing $8,000 from Jeppe Bertelsen and most of the remainder from a corporation which marketed the coal for them. That the contract recited that Jeppe Bertelsen and Lowry Bertelsen agreed to sell said leases, mine and mining property, as specifically described, to Louis E. Fricke and John H. Blair, (subject to liens for $28,585, as hereinafter stated), for $62,730, of which $15,000 had been paid in cash and used to pay outstanding obligations that had to be met to clear the title; and that the remaining $47,730 was to be paid in monthly instalments equal to fifty per cent. of the gross sales of coal, after deducting $2.25 per ton as the cost of production, with selling commissions not exceeding ten per cent.; the guaranteed minimum payment on the principal of such indebtedness to be not less than $2,500 each month, except as prevented by fire, strikes or shortage of cars, and also interest at the rate of seven per cent. per annum on the unpaid balance, payable monthly, the total purchase price to be all paid within two years, and the purchasers to pay all taxes, royalties, rents and insurance; the buyers should make only such repairs as

were approved by the sellers, and should not expend more than $1,000 in any calendar month for that purpose, and were each to draw from the business a salary of $300 per month, out of the $2.25 per ton allowed as cost of production. The buyers agreed they would keep the property free from all liens for labor, and from encumbrances of all kinds. The title to all the property and assets was to remain in the sellers until the purchase price, with interest, and all indebtedness arising out of the contract, should be fully paid, and upon failure to pay any instalment of principal or interest when due, or to perform any other covenant or provision of the contract, the sellers, on notice for twenty days, during which the default should continue, might take immediate possession, and all payments previously made should be considered as paid for rent for the prior use and operation of the mine. Coincidentally with the execution of the contract, the buyers assumed and agreed to pay the outstanding bonds secured by the mortgage to the City National Bank, as trustee, in the amount of $27,400 (the evidence showing that only that amount of bonds was then outstanding), and the Industrial Board judgment for $1,185.20. But, upon full payment of the purchase money and performance of all conditions, the sellers agreed to convey the property to said purchasers. And that each of certain appellants holds a miner's lien upon whatever interest in the mine it may attach to for a designated amount of wages earned by work done in the mine in November, 1922, before the twenty-fourth of the month.

The statute provides that "the miners and other persons working in and about the mine and others interested in the rental or royalty on the coal mined therein, shall have a lien on said mine and all machinery and fixtures connected therewith and everything used in and about the mine for work and labor performed within

two months, and for royalty on the coal mined for any length of time, not exceeding two months; and such liens shall be paramount to and have priority over all other liens except the liens of the state for taxes; and such liens shall have priority, as against each other, in the order in which they accrued, and for labor over that for royalty on coal"; provision being made for filing notice in the recorder's office and commencing suit to enforce the lien within a time specified. §8596 Burns 1914, §26, ch. 50, Acts 1905 p. 80.

In construing an earlier statute of which this is a revision, without substantial change in the particulars here involved (§5471 R. S. 1881, §15, ch. 10, Acts 1879 p. 22), this court held that it gave to employees of a company owning and operating a coal mine a lien for wages superior to that of mortgages which were prior in point of time, and that, as so construed, the statute was constitutional. The court said: "The mortgage to Warren, trustee, under which the bond holders claimed, and the mortgage to Koester and Korff were both executed by the mining corporation, as shown by the special finding of facts, more than four years after the statutory provisions above quoted took effect and were in force. Under repeated decisions of this court it must be held, therefore, that these statutory provisions entered into and formed a part of such mortgages, and that appellants acquired their mortgage liens on the mortgaged property subject to such statutory liens as might thereafter, in the vicissitudes of the mortgagor's business, attach to such property for work and labor performed, or for royalty, and with notice that the latter liens would, under the statute, 'be paramount to and have priority over' their mortgage liens." *Warren v. Sohn* (1887), 112 Ind. 213, 219, 220, 13 N. E. 863.

As applied to the operation of a mine under a contract with the owners by which the "purchasers" were

to keep the mine in operation, and pay the owners one-half the gross proceeds from sales of coal taken out, after deducting the estimated cost of digging and selling, which payments were not to be less than $30,000 per year in any event, and by which the purchasers were also to pay interest on the purchase money and keep up the mine, and could receive only salaries until the agreed price should be fully paid, subject to the forfeiture of all that might be paid toward the purchase price and of all title to the mine in case of any default for twenty days in paying principal or interest, or performing conditions, we think the miners must be held to have been employed by authority and direction of the owners, and to have the same rights to a lien against the holders of the mortgage as if employed directly by the owners themselves. In construing other mechanics' lien laws, it has been held that where a person, by direct authority of the owner, under a contract with him requiring it to be done, employs laborers to do work in making improvements, a lien for the work binds the interest of such owner. *Lengelsen* v. *McGregor* (1903), 162 Ind. 258, 265, 67 N. E. 524; *Cannon* v. *Helfrick* (1884), 99 Ind. 164; *Colt* v. *Lawrenceburg Lumber Co.* (1909), 44 Ind. App. 122, 88 N. E. 720; *Allen Estate Assn.* v. *Boeke & Son* (1923), 300 Mo. 575, 591, 254 S. W. 858, 861. And that rule, we think, should be applied to the facts of this case. Where the owner of a mine, instead of reserving a mere royalty, has, by contract with the operator of his mine, bound the latter for a period of years to pay directly to him a large part of the gross receipts from sales of the coal taken out, and to pay for his benefit practically all the remainder in excess of an estimated cost of digging the coal, which includes a monthly salary for such operator, he will not be heard to deny that the mining was done on his behalf to the degree that what-

ever title he may have to the mine will be subject to a statutory lien for wages earned in taking out the coal. Under the language of the statute (§8596, *supra*, as construed by this court in *Warren* v. *Sohn, supra*) this makes the lien of the miners superior to the lien of the mortgage held by appellee bank. Neither is it inequitable that the lien for the wages of miners, without whose labor the conditions of the mortgage could not be performed, should be held superior to the lien of a mortgage on a coal mine executed while the statute referred to was in force, which recited that it was given for money borrowed to pay for coal leases, provide working capital and make improvements, so as to enable the borrower to open and operate the coal mine on which it was given, and bound the mortgagor to set aside as a sinking fund each year a sum equal to ten per cent. of the outstanding bonds, and to use it in taking up the mortgage bonds at 105. The principle involved is not unlike the one applied where mortgaged property, on which labor must be done by mechanics in making repairs, was left in the possession of the mortgagor to be used in earning money with which to pay the mortgage debt. *Watts, Trustee,* v. *Sweeney* (1891), 127 Ind. 116, 124, 125, 26 N. E. 680, 22 Am. St. 615. Persons who loaned money for use in developing a coal mine and to provide working capital, but stipulated that in addition to the payment of interest, at least ten per cent of the amount loaned should be set aside the first year to take up the mortgage bonds at a price above par, and that ten per cent. of whatever debt should remain unpaid should be set aside each year thereafter for the same purpose, were charged with notice that these conditions could only be complied with by employing miners to dig the coal. And the statute gave them ample notice that the lien of their mortgage was subject to be displaced in

favor of the wages due miners for work which the mortgage required to be done.

The several motions for a new trial filed by each of the appellants should have been sustained.

The appellees Jeppe Bertelsen and Lowry Bertelsen filed an answer to the cross-complaint of appellants Donnelly and ninety-four others, by which they alleged that they had put Fricke and Blair in possession of the mine under the sale contract above referred to, and that the labor done by each cross-complainant for which a lien was claimed was performed while working as an employee of Fricke and Blair, and not as an employee of said Bertelsen and Bertelsen. A demurrer to this answer was overruled and appellants excepted. Under the law as declared above, the demurrer should have been sustained.

The appellees, Evansville Supply Company, Frank J. Seng, James N. Garrison, Wesley Heugel, and Raymond Ashby, who were denied the right to foreclose liens for materials as against the fund arising from the sale of the mine and mining property, and were given only personal judgments against appellees Fricke and Blair, have not taken an appeal nor assigned cross-errors. The judgment is, therefore, affirmed as to each of them. But the judgment recovered by appellees City National Bank, Jeppe Bertelsen and Lowry Bertelsen, as against the appellants, is reversed, with directions to sustain each motion of appellants for a new trial, and to sustain the demurrer of each appellant to the second paragraph of the answer of said Jeppe Bertelsen and Lowry Bertelsen to the said cross-complaint.

ON PETITION FOR REHEARING.

EWBANK, J.—As modified, the original opinion merely decides that, under the circumstances of this case, the

miners who dug coal while employed by purchasers of a mine holding under a conditional sale contract which contained stipulations that one-half of the receipts from gross sales of the coal taken out should be paid to the vendor of the mine, and that the amount thus paid should not be less than $2,500 per month, held liens for their wages superior to the lien of a mortgage on the mine, which recited that it was given for money borrowed to pay for leases, make improvements and provide working capital, and stipulated that the borrower should set aside and deposit each year, as a sinking fund for the redemption of the mortgage bonds, a sum equal to ten per centum of whatever bonds should remain outstanding at that time. No question was presented as to the personal liability of anybody for such wages, and nothing in the opinion has any reference to questions of personal liability.

Petitioner cites and relies upon *Hopkins* v. *Hudson* (1886), 107 Ind. 191, 8 N. E. 91, as being inconsistent with such decision. In that case, the owners of the fee of certain coal lands leased a mine thereon to one who operated it by employing miners to dig coal, but failed to pay their wages; the owners (in the language of the court), "had nothing to do with operating the mine during the time the plaintiffs were employed therein," and the person who employed them "had, at the time the laborers were employed and the work done, no other interest in the property except that of a lessee." It was held that the lien of the miners employed by one whose sole interest and authority arose from the fact that he was a lessee did not attach to the interest of lessors who owned the mine but were not in any way concerned in its operation. But the case of *Warren* v. *Sohn* (1887), 112 Ind. 213, 13 N. E. 863, was decided little more than a year later, by the same bench of judges who made the decision in *Hopkins* v. *Hudson,*

*supra,* and expressly decided that where a mortgage was given by a mining company on a coal mine which it owned, and "the corporate name of the mortgagor, and the character and description of the mortgaged property, were such as clearly indicated to the mortgagees, and those claiming under them, that such property was intended to be used, and could only be used by its owner, in its coal mines in this state, for the purposes of mining coal," the express provisions of the statute (§8596 Burns 1914, Acts 1905 p. 80), gave to the miners employed by such owner a lien for wages earned in digging coal during a period of two months, superior to the lien of the mortgage. The result reached in one of these cases was not inconsistent with what was actually decided in the other, and any seeming discrepancy between what was decided in one and what was said in deciding the other was probably due to an application of general terms to specific facts. The language of an opinion must be restricted to the facts of the case then before the court, and a decision is authority only to that extent; not as to what may be said by way of reasoning and illustration in reaching the conclusion announced. *Lucas* v. *Board, etc.* (1873), 44 Ind. 524, 541; *City of Terre Haute* v. *Burns* (1917), 70 Ind. App. 712, 117 N. E. 519.

The facts of the case of *Hopkins* v. *Hudson, supra,* were so different from the facts of the case at bar, and from the facts of the case of *Warren* v. *Sohn, supra,* that what was said in deciding that case cannot be accepted as controlling in this one.

The petition for a rehearing is overruled.