# Wilkinson, Assignee of Clegg, Appellant, *v.* Patton et al.

*Wages—Lien—Insolvent debtor—Sale—Act of May* 12, 1891.

Under the act of May 12, 1891, P. L. 54, a creditor for wages has no lien on personal property transferred in good faith by an insolvent debtor in payment of his debts.

*Evidence—Sale—Good faith.*

On an issue between an execution creditor for wages and the transferee of the debtor, evidence tending to show that the transfer had not been made in good faith is admissible.

Argued Feb. 5, 1894. Appeal, No. 426, Jan T., 1893, by plaintiff, Charles Benjamin Wilkinson, assignee for benefit of creditors of William Clegg, Jr., from judgment of C. P. Delaware Co., June T., 1892, on verdict for defendants, Frank Patton et al. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.

Sheriff's interpleader. Before CLAYTON, P. J.

The facts appear by the opinion of the Supreme Court.

At the trial, John Evans, of the firm of Naulty, Evans & Co., a witness for defendants, was asked: "Q. How much capital did you put in? By Mr. Smith: I don't think that is very material. By Mr. Robinson: I think so—my purpose for asking this is to show that all the capital that was put in was very small. The machinery was idle and that this was an experiment, and that the $1,890 fixed in the bill of sale was unreasonable, that the agreement between these parties and the landlord was a mere experiment. By the Court: I will permit it. By Mr. Smith: I object to that question. By the Court: Being a question of fraud I will admit it." Exception by plaintiff and bill sealed. [1]

By Mr. Robinson: "How much capital did you put in? A. Somewhere about $1,200 or $1,500."

J. Alfred Howard, deputy sheriff, was asked: "Q. Can you state whether or not this notice of wage claims was served on you? By Mr. Smith: I object. By the Court: Let them go in evidence." Exception by plaintiff and bill sealed. "A. Yes, sir." [2]

Plaintiff's points were as follows:

"1. If the defendants have any lien upon the goods and chattels levied upon for wages due them, such lien can only be asserted or determined upon the distribution of the assigned estate of William Clegg, Jr., and cannot be asserted in this case." Refused. [4]

"2. The defendants cannot have a verdict merely upon the ground that their claim is for wages. They stand upon the ground of ordinary judgment creditors." Refused. [5]

Binding instructions for defendants were given. [3]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1, 2) rulings; (3–5) instructions, quoting bills of exceptions and evidence and instructions.

*A. Lewis Smith, Alfred J. Wilkinson* with him, for appellant. —It is impossible to distinguish this case from Taylor v. Guarantee Trust Co., 149 Pa. 409, with the facts of which it is on all fours.

When the act speaks of transfers caused by death or insolvency it means a transfer caused by insolvency in the same sense as that caused by death—the due course of the administration of the estate of the insolvent as of the decedent. Any other construction leaves the question of insolvency to the guess of the court, or, perhaps, to the whim of the jury, and that, too, in construing legislation of a class which calls for strict interpretation.

The sale in the present case being conceded to be valid and not fraudulent, the effect of the decision of the court below was to incorporate the statutory lien into the judgment and execution under it, so as to enable the sheriff to make a title to the goods which could not be made under the judgment alone.

*V. Gilpin Robinson, Horace P. Green* with him, for appellee. —If the contention of appellant is correct then it is within the power of an insolvent concern (such as is mentioned in the act giving a wage earner his lien for wages earned within six months) to make the act a nullity.

If the landlord instead of securing a bill of sale toward satisfaction of his rent, had distrained, the wage earners would have

been entitled to be first paid out of the proceeds of sale.   See act of June 12, 1878, Purd. 1699, pl. 6, P. L. 207.   Why should he secure a better title by assignment ?   The very purpose of the act is to create a lien which shall follow the sale or transfer of the business of an insolvent concern, because the lien attaches from the date of such sale or transfer.

The intention of the act is of course to restrict its application to the absolute transfer or winding up of the whole business ; because, otherwise, no one could safely buy without a guarantee of the solvency of the seller.   Where, however, a transfer or a purchase is made of an entire plant, there is no more hardship in calling upon the purchaser to see to the payment of the wage earners that have been employed in carrying on the business for the six months immediately preceding the assignment than there is in requiring a purchaser of real estate to protect himself against mechanics' liens or unpaid taxes.

The operation of the act is not intended to be confined to an assignment for the benefit of creditors or to a transfer by that act.   Insolvency " is the state of a person who from any cause is unable to pay his debts or who is unable to pay his debts as they fall due in the usual course of trade or business."   Bouvier's L. Dict., Insolvency.   Can it be that if, instead of making a general assignment for the benefit of creditors, one prefers certain creditors, by such act an insolvent firm can change the course of distribution of its assets ?   A fortiori the law applies to such cases, because the very act defeats the purpose and intent of the law, as it would sweep away from the laborer the preference intended to be given him.

While the act prescribes no remedy for enforcing payment in case of a sale and transfer such as this, yet this need not defeat the right : Delaware Co.'s Ap., 119 Pa. 59.

OPINION BY MR. JUSTICE FELL, May 23, 1894 :

The question in this case is whether, under the act of May 12, 1891, P. L. 54, a creditor for wages has a lien on personal property transferred in good faith by an insolvent debtor in payment of his debts.

Wm. Clegg, Jr., rented a mill and its machinery to Naulty, Evans & Co.   They became indebted to him for rent, and in settlement thereof transferred to him all their personal property

on the premises. At the same time they surrendered their lease and delivered exclusive possession of the property transferred and of the demised premises. A month later they confessed judgment to some of their workmen for wages, and the sheriff levied on the personal property which had been transferred to Clegg. A feigned issue was awarded, in which Charles Benjamin Wilkinson, who had become assignee for the benefit of creditors of Clegg, was plaintiff, and the execution creditors for wages of Naulty, Evans & Co. were defendants.

While there were other questions involved, the case was taken from the jury by a peremptory instruction to find for the defendants on the ground that Naulty, Evans & Co., being insolvent, the transfer of their property in payment of the claim for rent was subject to the lien of debts for wages. Whether, if subject to such liens, they could be enforced in the manner indicated in the charge, it is unnecessary now to consider, as we are of opinion that no liens existed.

The Act of May 12, 1891, P. L. 54, is amendatory of the Act of June 13, 1883, P. L. 117, which act is an amendment of the Act of April 9, 1872, P. L. 47. Each successive act enlarges the class of persons intended to be benefited, but in other respects no material change has been made in the legislation upon the subject.

The Act of 1891 provides that moneys due for wages of certain enumerated persons, within limits as to time and amount, shall be liens upon real or personal property sold by execution or otherwise on account of the death or insolvency of the employer, and shall be first paid out of the proceeds of the sale of such property. Omitting the parts that are descriptive of the classes of persons and kinds of property included, the effective portion of the act is : " . . . . all moneys due for labor . . . . for any period not exceeding six months preceding the sale of the real or personal property . . . . by execution or otherwise on account of the death or insolvency of such employer, shall be a lien on such real or personal property . . . and shall be preferred and first paid out of the proceeds of such sale."

The jury were in effect instructed that the sale by the tenant to the landlord, while not fraudulent in fact or in law, was an act of insolvency, and that the creditors for wages had liens upon the goods sold which could be enforced by a levy under judgments subsequently obtained.

This places a construction upon the act which we think was not contemplated by the legislature, and which cannot be sustained. It was not intended that there should be a specific lien on the property in the hands of the owner or of the vendee. By a sale or transfer by execution or otherwise on account of the death or insolvency of the employer is meant a sale caused by operation of law by reason of death or insolvency—as a sale by an administrator or executor, by an assignee for the benefit of creditors, or by a receiver, and not a sale by the employer. This construction is indicated by the language of the act, and is in harmony with the settled legal policy of the state. The method provided for the enforcement of the claim for wages is that " it shall be preferred and first paid out of the proceeds of such sale." This evidently refers to a sale effected by legal process, where a fund is raised for distribution, and not to a sale made by the owner. Money in the possession of a vendor of property is not the proceeds of a sale on which a claim can be preferred and first paid.

The construction placed upon the act by the learned judge would create a class of liens of the most dangerous and obnoxious character. No one could purchase property without assuming the risk of the insolvency of the vendor. The principle is the same whether the sale is of a part or of the whole of the debtor's property, and whether the sale is in payment of a particular debt or to realize funds for general use, either in the payment of debts or the conduct of business. It is the established rule in this state that a debtor may prefer a creditor, and it was as lawful for Naulty, Evans & Co. to transfer their property to one creditor as it would have been to sell it to a stranger.

The first assignment of error is to the admission of testimony which went to the good faith of the transfer, and which was properly received. This assignment is overruled, and the remaining assignments are sustained.

The judgment is reversed and a venire de novo awarded.