BELL ET AL. *v.* HINER.

[No. 1,908.   Filed June 18, 1896.   Rehearing denied Oct. 14, 1896.]

LABORER'S LIEN.—*Superior to a Prior Chattel Mortgage.—Statute Construed.*—Under section 7051, Burns' R. S. 1894 (5206, R. S. 1881), providing that when the business of any person shall be suspended by the action of creditors, the debts owing to laborers, not exceeding $50.00 to each laborer, for work performed within the next preceding six months, shall be preferred and first paid in full, a transfer by an employer of all his property to a chattel mortgagee creates a superior lien in favor of such laborers.—Reinhard and Ross, JJ. Dissenting. *pp. 185–190.*

SAME.—*Statute Liberally Construed.*—Statutes providing that laborers shall be preferred creditors when the business of their employer shall be suspended by the action of creditors, are remedial in their nature, and are liberally construed. *p. 190.*

PLEADING.—*Action to Enforce Laborer's Lien.—Estoppel.*—In an action by a laborer to enforce his lien under section 5206, Burns' R. S. 1894, an answer of estoppel counting upon plaintiff's failure to make known his claim is bad, when defendant's want of knowledge of its existence is nowhere alleged. *p. 191.*

SAME.—*Demurrer.—Harmless Error.*—Sustaining a demurrer to a bad pleading is a harmless error, although the demurrer is insufficient to test the pleading. *p. 191.*

LABOR LIENS.—*Statutes.*—The Act of March 3, 1885, which makes no provision for, and does not cover, the subject of labor liens except where the property has passed into the hands of an assignee or receiver does not cover the whole subject matter and repeal by implication the Act of 1879 (section 5206, R. S. 1881). *p. 192.*

From the Allen Circuit Court. *Affirmed.*

*P. A. Randall* and *N. D. Doughman*, for appellants.

*J. M. Robinson*, for appellee.

GAVIN, J.—On October 25, 1894, one Jasper was engaged in keeping a livery stable at Ft. Wayne. At this time and prior thereto, one Bell held a mortgage on the property used by Jasper in said business, viz: certain horses, carriages, etc., "and all other chattels belonging to the said Jasper in said barn" to secure $1,000.00, this being more than the value of the property. Jasper being upon that day insolvent, threatened with suit and pressed for payment by Bell and unable to meet his liabilities, at his request conveyed to Bell all of said property in payment of said debt, and his business was on said day and thenceforth continuously suspended by the actions of said Bell, who afterward sold the property to one Martin, who had knowledge of appellee's claim. Appellee was a laborer employed in the stable, to whom seven weeks' wages was due for work performed within that period last preceding the sale, and subsequent to the execution of the mortgage and the due recording thereof.

Section 7051, Burns' R. S. 1894 (5206, R. S. 1881), provides that when the property of any person engaged in business "shall be seized, upon any mesne or final process of any court of this state, or where their business shall be suspended by the action of creditors or put into the hands of any assignee, receiver or trustee, then in all such cases the debts owing to laborers or employes, which have accrued by reason of their labor or employment, to an amount not exceeding $50.00 to each employe, for work and labor performed within six months next preceding the seizure of such property, shall be considered and treated as preferred debts, and such laborers or employes

shall be preferred creditors and shall be first paid in full, and if there be not sufficient to pay them in full, then the same shall be paid to them *pro rata,* after paying costs."

Under this section appellee sought to enforce a lien for $50.00 against the property in Martin's hands.

Appellants assert, 1st, That by the statute no lien is created nor any charge made against the property unless it shall come into the hands of some officer, assignee, or other trustee under the court, to be administered upon according to law; 2d, That even if a lien is created it is junior to the lien of the mortgage.

Under our authorities neither position is tenable.

The statute it is true does not in terms create any express lien *eo nomine,* but the Supreme Court in *Bass* v. *Doerman,* 112 Ind. 390, decided that by this statute a lien was given to the laborer superior to the rights of, and enforceable against, one to whom the property of the insolvent debtor was sold in payment of debts due the purchaser, where the business of the debtor was by such action of the creditor thereby suspended. The court's liberal construction of this statue has been approved in subsequent cases. *Farmers', etc., Co.* v. *Canada, etc., R. W. Co.,* 127 Ind. 250, 11 L. R. A. 740; *Aurora, etc., Bank* v. *Black,* 129 Ind. 595; *Pendergast* v. *Yandes,* 124 Ind. 159. Counsel rely upon *Wilkinson* v. *Patton,* 162 Pa. St. 12, 29 Atl. 293, as establishing a different and better doctrine. There is some difference in the statutes by which the cases may perhaps be distinguished. In any event, however, we are satisfied to follow the adjudications of our own court.

In *State, ex rel.,* v. *Aetna Life Ins. Co.,* 117 Ind. 251, it is said by Elliott, J., when considering the question of superiority of a statutory lien over a prior mortgage lien: "The statute must determine the character and extent of the lien. * * * It is not necessary that

it should in express terms, declare that the lien shall be a paramount one, for if the intention can be gathered from the general words and purposes of the statute, the courts will give it effect." This is in harmony with the principle asserted by the Supreme Court of Massachusetts, which says, in *Dunklee* v. *Crane*, 103 Mass. 470, "The statute contains no express provisions that the lien shall attach and have priority over mortgages and other incumbrances created after the contract, but such is the necessary implication." It also accords with *City of Paterson* v. *O'Neill*, 32 N. J. Eq. 386.

It is true, as urged by appellants' counsel, that the Bass case does not decide that the labor lien is superior to a prior mortgage, that question not being involved; but it does decide that the debt is a charge against the property in the hands of a purchaser for value. The word lien "includes every case in which personal or real property is charged with the payment of a debt." Anderson's Law Dict., 623.

In *Warren* v. *Sohn*, 112 Ind. 213, it was claimed that mortgage liens were superior to subsequent miners' labor liens, although the statute declared that such labor liens should be paramount to, and have priority over, all other liens except taxes; yet the court decided that the statutes must be given effect and the mortgages yield to the labor liens. Here the statute directs that the labor claim shall be preferred, and shall be "first paid in full." It being established, as it is by the Bass case, that the statute gives a lien for the labor claim, then it seems to us the intent that it shall be a paramount lien is clearly expressed. If it is to be "first" paid in full we do not well see how the mortgage can come in before it.

When the mortgagee accepted his mortgage, he must be deemed to have done so with knowledge that

if the business was continued, and the contingency contemplated by the statute should occur, then the labor debts would be preferred and must be first paid. The law entered into the mortgage contract as a silent but potent factor, and the mortgagee accepted it subject to such rights as might accrue to others under the law. *Warren* v. *Sohn, supra*; *Farmers' etc., Co.*, v. *Canada, etc., R. W. Co., supra,* p. 264; *Hancock* v. *Yaden,* 121 Ind. 366, 6 L. R. A. 576.

As said in some of the cases it is wholly voluntary upon the part of the mortgagee whether he will accept a mortgage with the limitations by law incorporated therein.

In *Provident Institution* v. *Jersey City,* 113 U. S. 506 it was decided that a statutory lien for water rent was superior to mortgages executed prior to the attaching of the supply pipes to the mains. It is said, "when the complainant took its mortgages, it knew what the law was; it knew that by the law if the mortgaged lot should be supplied with Passaic water by the city authorities, the rent of that water as regulated and exacted by them, would be a first lien on the lot. It chose to take its mortgage subject to this law." To the same effect are *Vreeland* v. *O'Neil,* 36 N. J. Eq. 399, and *Vreeland* v. *Jersey City,* 37 N. J. Eq. 574.

There the statute made the water rent assessment a "lien thereon from the time of the confirmation thereof until paid, notwithstanding any devise, descent, alienation, mortgage or other encumbrance thereon." This language was adjudged to make the water rent paramount to prior mortgages, although it was not so expressly declared in the statute.

The principle upon which a mortgage is subordinated to a statutory lien authorized and made superior by a statute in force when the mortgage is executed is not by any means new or novel. Nor does

Indiana stand alone in thus providing security for the wage earners who depend upon their daily toil for support. For many centuries, in admiralty, the rights of seamen to their wages have been held superior to the mortgagees of the vessel. *The J. A. Brown,* 2 Lowell 464; 2 Jones on Liens, section 1775.

In Mississippi the liens of agricultural laborers are made superior to prior mortgages. *Buck* v. *Payne,* 52 Miss. 271; *Bruck* v. *Paine,* 50 Miss. 648.

In Michigan the wages of miners are given liens paramount to all others. *McLaren* v. *Byrnes,* 80 Mich. 275, 45 N. W. 143.

In that state, as in ours, no notice of lien need be given, but the court says: "All persons are bound to take notice that unpaid laborers for a mining corporation in the Upper Peninsula have a lien for their labor upon all the real and personal property of the corporation in that portion of the state."

In Iowa we find the decisions exactly in harmony with our own. There is a statute similar to ours, substantially identical in terms, so far as it relates to the matters herein involved. It does not in terms create a lien nor declare it paramount to prior mortgages, but provides as does ours that the debts owing to laborers "shall be considered and treated as preferred debts and such laborers and employes shall be preferred creditors, and shall first be paid in full; and if there be not sufficient to pay them in full, then the same shall be paid to them pro rata after paying costs." In *Reynolds* v. *Black,* 91 Ia. 1, 58 N. W. 922, the question was presented as to whether, when the property had been taken by mortgagees, the laborers had any lien, and, if so, whether it was superior to the mortgages.

There as here it was "contended that no lien is given to the laborer, that to give him preference over

existing liens is to displace such liens, and that the preference only applies to what is left after satisfying existing liens;" but the court said: "To so construe this statute would largely defeat its manifest purpose;" and adjudged that there was a lien superior to the mortgages. The doctrines of this case are reaffirmed by *St. Paul, etc., Co.* v. *Diagonal Coal Co.* (Ia.), 64 N. W. 606.

We are not able to perceive that any general disaster will be brought upon the business interests of the community by our holding. The lien does not attach save in those cases where there has been a seizure by an officer or a collapse of the business; and it is, under this statute, in the absence of fraud, limited to the property then belonging to the debtor. Thus the ordinary everyday transfer and sale of property in the usual course of a going business will not be affected. The smallness of the amount of the liens also serves to lessen our apprehension as to the evil results to follow from the application to this case of the ordinary rules of law, and the giving effect to the plain letter of the statute as to the order of precedence. A result which affords to the day laborer protection to the amount of $50.00 does not appear to us so highly inequitable as to call for any strained or fanciful construction of the statute.

That he "shall be a preferred creditor and shall first be paid in full" seems to us simple, plain English, easily understood, the meaning of which would not ordinarily be mistaken by the average man. Neither is the statute to receive a strict construction as being in derogation of the common law. It is remedial in its nature. As was said by the Supreme Court in speaking of a statute similar in character and enacted for a similar purpose, viz: "to secure to employes of corporations an efficient remedy for the collection of

money due them for wages." "Such statutes are not only constitutional, but they are to be liberally construed with a view of rendering effectual the purpose of the statute." In any event the law is plain and if not wise the remedy is by legislative repeal rather than by judicial nullification.

Assuming without deciding that the complaint must show a transfer of all the property used in the business, we are of opinion that this fact sufficiently appears. The averment in substance is that Bell, on October 25, 1894, had a mortgage on all the chattels in the barn and that this property was turned over to him.

The answer of estoppel was clearly bad. It counted upon appellee's failure to make known his claim; appellants' want of knowledge of its existence is nowhere alleged. This was essential to enable him to obtain the benefit of appellee's silence as an estoppel. *Roberts* v. *Abbott*, 127 Ind. 83; *First National Bank* v. *Williams*, 126 Ind. 423.

Earlier cases held that it was reversible error to sustain a defective demurrer to an answer without reference to its sufficiency. *Gordon* v. *Swift*, 39 Ind. 212; *Dugdale* v. *Culbertson*, 7 Ind. 664. Later and better considered decisions, however, declare the law to be that although the demurrer be insufficient to test the pleading and might be overruled without error, yet if it is in fact sustained and the pleading is really bad, then no harmful error occurs. *Wade* v. *Huber*, 10 Ind. App. 417; *Foster* v. *Dailey*, 3 Ind. App. 530: *Firestone* v. *Werner*, 1 Ind. App. 293; *Board* v. *Gruver*, 115 Ind. 224; *Palmer* v. *Hayes*, 112 Ind. 289; *Hildebrand* v. *McCrum*, 101 Ind. 61.

We are unable to see that the degree of insufficiency or informality of the demurrer affects the application of the principle thus established.

It is argued that upon the principle declared in *Eversole* v. *Chase*, 127 Ind. 297, section 7051, Burns' R. S. 1894, is not in force, because it was an amendment of a statute, section 5206, R. S. 1881, passed in 1879, which had been repealed by implication by the passage of the act of March 3, 1885, E. S., section 1598, being section 7058, Burns' R. S. 1894.

"Repeals by implication are not favored in the construction of the statute;" yet "it is ordinarily true that the enactment of a new statute covering the whole subject-matter of an older statute and containing provisions that cannot be reconciled with it, operates as an implied repeal of the older one. *Robinson* v. *Ripey*, 111 Ind. 112."

This is the rule declared by this court through Davis, J., in *Allen* v. *Town of Salem*, 10 Ind. App. 650. It was further said in the same case, "In order to effect such repeal by implication, it must appear that the subsequent statute revised the whole subject-matter of the former one, and was intended as a substitute for it, or that it was repugnant to the old law."

The act of March 3, 1885, makes no provision for, and does not cover, the subject of labor liens where the property has not passed into the hands of an assignee or receiver, but is confined to those cases where it does come into the hands of an assignee or receiver. It falls far short of covering the whole subject-matter of the act of 1879; nor is there any good reason why both should not stand together. Upon the principles of law announced in the Town of Salem case, *supra*, and the authorities therein cited, we are of opinion that the act of March 3, 1885, did not repeal the law of 1879.

Judgment affirmed.

## DISSENTING OPINION.

REINHARD, J.—The appellee performed work and labor for one Jasper, the owner and keeper of a livery stable. These services were rendered during the seven weeks immediately preceding the 25th day of October, 1894, and amounted to about $60.00. Prior to that date, viz.: on January 9, 1894, Jasper had executed a chattel mortgage on the stock and other contents of the stable to the appellant Bell, to secure him in the payment of a *bona fide* debt of $1,000.00. The mortgage was duly recorded and was in all respects regular and for an amount equaling the entire value of the property to which it attached. Jasper in good faith transferred the property to Bell in payment of his mortgage debt, and Bell sold and transfered it in turn to appellant Martin for a valuable considertion. Martin had full knowledge of appellee's claim at the time of the purchase.

Appellee asserts a lien upon the property prior and paramount to the interests of the appellant Martin. It is agreed that whatever rights the appellee has acquired are founded upon and grow out of the provisions of section 7051, Burns' R. S. 1894 (5206, R. S. 1881). That section reads as follows:

"Hereafter, when the property of any company, corporation, firm or person, engaged in any manufacturing, mechanical, agricultural or other business or employment, or in the construction of any work or building, shall be seized upon any mesne or final process of any court of this state, or where their business shall be suspended by the action of creditors, or put into the hands of any assignee, receiver or trustee, then in all such cases the debts owing to laborers or employes, which have accrued by reason of their labor or em-

ployment to an amount not exceeding $50.00 to each employe, for work and labor performed within six months next preceding the seizure of such property, shall be considered and treated as preferred debts, and such laborers or employes shall be preferred creditors and shall be first, paid in full, and if there be not sufficient to pay them in full, then the same shall be paid to them *pro rata,* after paying costs."

Waiving all technical questions, and assuming the statute cited to be in force, and that it has not been repealed by implicaion as seems to have been intimated or at least questioned in the case of *Eversole* v. *Chase,* 127 Ind. 297, and granting that the conditions are such as entitle the appellee to enforce his claim under the statute, over the chattel mortgage and the rights growing out of the same, the proposition we are to determine is whether the mortgagee of a chattel mortgage, executed in good faith, and for a valid debt, or the assignee of such mortgage, may under the provisions of this section be cut out and deprived of the benefits of a legally acquired mortgage lien by a claim of the character of that of the appellee in this action, originating as much as nine months subsequent to the execution and the recording of such mortgage; and whether by virtue of the same section, by mere silence and without any legal steps being taken by which the intention to hold such a lien is declared and made a matter of public record, a charge may be fastened upon the mortgaged property superior and paramount to that of a chattel mortgage more than nine months old and that, too, in the absence of an express provision to that effect in the statute itself.

I am of the opinion that the case of *Bass* v. *Doerman,* 112 Ind. 390, does not decide that the employe acquired a lien which is even of as high a character as a chattel mortgage or other lien that accrued prior to

the time of the performance of the labor of the em-
ploye, and that acquires validity only by being re-
corded or by having notice thereof made a matter of
public record. A careful reading of the case cited will
show, as I think, that it does not sustain the view
taken by the majority. What the court doubtless in-
tended to hold, and as it appears to me did hold, was
that a claim of the character of the appellee's in the
present case should have preference over that of any
general creditor of the insolvent for debts that had ac-
crued during the same period in which the laborer's
lien accrued, and that a transfer of the property in pay-
ment of such a general debt cannot be made to deprive
the laborer of his claim; in other words, that general
claims and debts against the concern which accrued
contemporaneously with the claim of the employe
should be deferred to the latter, and that the fund
arising from the sale of the property should be used
to pay such preferred claims in full before payment
of general claims. There is no intention from any-
thing that appears in the statute itself, as I read it,
that the laborer was to acquire a lien at all, except a
mere charge on the assets entitling him to preference
over general creditors, much less one of such a su-
perior character as to reach back and become para-
mount to all other liens, of whatever nature, that
were created before the performance of the labor con-
stituting the basis of the employe's claim. A debt
may be a preferred debt in a sense, and yet not be su-
perior to another debt for which a lien is given, and so
a creditor may be a preferred creditor and still his
claim may not be superior to that of lien holders. The
word "preferred" is a relative term. It necessarily re-
fers to something else, and means that the thing to
which it is attached has some advantage over another
thing of the same character, which but for such ad-

vantage would be like the other. *State* v. *Cheraw, etc.,
R. R. Co.,* 16 S. C. 524. Under this definition a pre-
ferred debt or claim, which is not a lien, is superior
only to another preferred debt or claim of the same
character, or that is not a lien. It is never superior
to a lien unless made so expressly by the terms of the
law. When we speak of "preferred claims" in connec-
tion with the settlement of decedents' estates, for ex-
ample, we do not necessarily mean claims that are su-
perior to liens, or even equal to them. Thus a physi-
cian's bill for services in attending the decedent in his
last illness is a preferred claim or debt, and the phy-
sician holding such claim is. a preferred creditor, but
this does not mean that his claim is superior to that
of a mortgage or other lien created in the life time of
the decedent. The same is true of funeral expenses,
expenses of administration, etc. Such a claim is pre-
ferred simply to the general debts of the decedent;
that is to say, to debts or claims that are not liens, and
it becomes a charge upon the assets of the estate to be
administered in preference to such other debts or
claims that are not liens, just as a claim of the char-
acter with which we are now dealing is a charge upon
the assets of the insolvent and is preferred to other
debts not liens. But it does not become superior to
those claims which are liens. Hence I do not see by
what process of reasoning the conclusion can be
reached that the statute in construction makes the
claim of the appellee a lien superior and paramount
to all other liens, of whatever character and antiquity,
that may exist against the insolvent's property.

Granting, however, that the Bass case referred to
does decide that the laborer has a lien, and that the
statute provides that the same shall be a preferred
lien (which I do not see how it can be admitted), the
question still remains, to what liens or claims is it pre-

ferred or superior?   How far back may the preference be carried under the provisions of the statute?   The majority opinion holds that the labor lien is prior and superior to all other liens, even those previously created.

The section referred to provides that claims of employes shall be preferred which have accrued for work or labor performed within the six months next preceding the seizure of the property or the suspension of business.   If other liens have attached during that period to which the employe's lien is to be preferred, and a preference is given over liens, that preference must allude to liens that accrued with the same period as the employe's lien; or, in other words, to liens of the same character as to age.   There is no language in the decision of *Bass* v. *Doerman, supra,* or in the statute itself which even remotely intimates, much less warrants, a construction which would give the employe a lien antedating that of a mortgage or other lien on the property given to secure a *bona fide* debt, and executed and recorded more than nine months before the seizure or sequestration of the chattels.   To hold that the laborer by virtue of this law has a lien for his wages superior to all other liens, then or before then existing, is to inject into the statute language which is not there, and to enlarge by construction the scope of the rights conferred by this statute far beyond anything ever contemplated by it, even when the same is considered in the most favorable light of any interpretation placed upon it by the Bass case.

If such a construction is to prevail, a class of liens will be created which was never intended and which in the language of the Supreme Court of Pennsylvania, would be "of the most dangerous and obnoxious character.   No one could purchase property without assum-

ing the risk of the insolvency of the vendor." *Wilkinson* v. *Patton*, 162 Pa. St. 12, 29 Atl. 293.

More than that, no one who has taken a chattel mortgage to secure a debt, however sacred, will have any reason or ground to feel secure in the validity or priority of his lien, although the public records may be absolutely clear as to the property of the debtor covered by such mortgage. If this be the law, and A sell to B a valuable horse, taking from the purchaser a chattel mortgage upon the animal to secure a balance of the purchase money still due, and B embark in the livery business, placing the horse in said business as part of the capital stock or assets thereof; or if B sell the horse to C, who afterward engages in such business, using the animal therein, every laborer or employe in the service of B or C would acquire a lien upon said horse for the value of his services for not exceeding $50.00, which would be superior to that of the original owner for the purchase money. The same is true of other personal property. The farmer who sells a cow and takes a mortgage for all or a portion of the purchase money, will be postponed in the collection of his debt or enforcement of his lien to the dairy maid who has rendered services in milking her. The coachman will have a prior lien upon the team of horses groomed by him, to a former owner who holds a mortgage for purchase money, and so on, *ad infinitum.* I do not believe that any such injustice, not to say absurdity, was contemplated by the enactment of this statute, yet these are only some of the many pernicious results that will be sure to flow from such a construction, if it should be upheld.

It is an old and familiar principle that statutes which are in derogation of common or private rights, or which confer special privileges, or impose special burdens or restrictions upon individuals, or upon any

Bell *et al. v.* Hiner.

class of persons, which are not shared by others outside of such class, are to be strictly construed. Black Interp. of Laws, 300. But the construction of the prevailing opinion, while its effect will be to greatly restrict the rights and interests of lienholders other than the class established by this construction, and to confer special privileges upon the class of persons coming within the provision of the law thus construed, that cannot be enjoyed by others outside of such class, would be an excessively free interpretation in favor of the class benefited, thus violating as it occurs to me, one of the fundamental and cardinal rules of statutory construction. And to say, as does the majority opinion, that the creation of such a preferred lien by mere construction affects only the remedy and not any right of the parties is to my mind, incomprehensible. A lien given by statute is not a remedy and to so characterize it would be a misapplication of the term, as much so as it would be to say that a mortgage was but a remedy. *Atkins* v. *Little*, 17 Minn. 342. Statutes relating to remedies affect merely the course and form of the proceedings, and not the substance of the judgment to be pronounced. The withdrawing of a means of enforcing a right already existing strikes at the right itself and impairs the obligation of the contract. *Johnson* v. *Fletcher*, 54 Miss. 628, 28 Am. Rep. 388.

Much stress seems to be laid upon the fact that our Supreme Court, in several cases, has given to statutes of a similar nature, what is claimed to be, an equally broad interpretation and has expressly approved the decision in *Bass* v. *Doerman, supra.* I think, however, when the cases which it is claimed contain such approval are closely examined, it will be found that they are not at all analogous in principle to the case at bar,

although in some of these cases the phrase "liberal construction" is made use of.

Thus, in *Pendergast* v. *Yandes*, 124 Ind. 159, no question of superiority of one lien over another arose, but the sole point discussed and decided was that the plaintiff, who was the superintendent of the defendant's lines of gas pipes, with authority to hire and discharge employes, was a laborer within the meaning of the statute and was therefore entitled to have his claim for wages declared a preferred claim, as against the claims of general creditors.

The case of *Farmers', etc., Co.* v. *Canada, etc., R. W. Co.*, 127 Ind. 251, has reference to a mechanic's and materialman's lien upon a railroad, and does not involve the construction of the statute in consideration, although the case of *Bass* v. *Doerman, supra,* is cited to the proposition that when the mortgagee accepted his security he must have contracted with a view to future labor to be performed, and for which he knew the law would give the employes a preferred lien. But in the case alluded to (*Farmers', etc., Co.* v. *Canada, etc., R. W. Co.*), while the priority of the laborer's lien was upheld, it was done upon the principle and for the reason that when the mortgagee accepted the chattel mortgage the property mortgaged had in fact no existence, for the railroad had not been built, and that the laborer had subsequently bestowed such work upon it as rendered it much more valuable than it was when the mortgage was executed; and, in fact, "gave all there was of value to the property claimed under the mortgage." Of course, it is not contended that any such principle as this enters into the consideration of the case at bar. Here the entire property had an existence at the time the mortgage upon it was executed, and instead of its value having been increased, it is but natural to suppose that with the

lapse of time it had actually deteriorated. The equities of the case of *Farmers', etc., Co.* v. *Canada, etc., R. W. Co., supra,* necessarily entered into the construction of the statute, and must be considered in connection with its language. That this is so is evident from the language of Elliott, J., who in the course of the opinion says: "That there is a natural difference between a case, such as this, where the railroad has not been built, and a case where the railroad has been constructed, is so evident that no one can fail to perceive it the instant his attention is directed to the matter."

Another case relied upon as giving sanction to the doctrine of "liberal construction" invoked by the majority is that of *Aurora Nat. Bank* v. *Black,* 129 Ind. 595. In that case, it is true, the general statement is made that such statutes should be liberally construed, and if this is any authority for injecting language into the statute which is not contained in it, then there is nothing further to be said. But it should not be forgotten that in the case just cited the statute we are now considering was not under construction, and that whatever was decided had reference to sections 5286-5288, Burns' R. S. 1894 (3999-4001, R. S. 1881), which in express terms give the employes of a corporation doing business in this State a prior lien upon the corporate property for the labor performed; and even there, the lien is given only from the date of employment, and is made superior only to other liens acquired or created subsequently to the date of such employment, the sections cited also providing the method of acquiring and the means of enforcing such liens.

In the case cited last, it was not held that the lien thus to be acquired is superior to all other liens, whether created before or after the date of the employment of the laborers, or that the statute contem-

plated any rights not apparent on the face thereof. The point decided there was that the lien extended to property of the corporation acquired and transferred by it the day before it went into the hands of a receiver and after the performance of the labor for which the lien was asserted. This interpretation was just and reasonable, but it falls far short of supporting the position taken by the appellee in the present case, and sustained by the majority of this court.

Nor is there anything in the case of *State* v. *Aetna Life Ins. Co.*, 117 Ind. 251, that requires us to adopt the construction of the majority of the court in this case.

Every case and its language must be interpreted with reference to the question under consideration. If isolated expressions or dicta of the judges can be used as authority for the establishment of such extraordinary doctrines as are declared in the prevailing opinion in the case before us, then there is no longer any security in a mortgage and other honestly acquired liens, and the only remedy is in dealing exclusively upon a cash basis. In the case last cited, however, it is expressly declared that the statute itself must determine the character and extent of the lien, although the intention to make it paramount might be gathered from the general words and purposes of such statute. If there is anything in the general language or in the purpose of the statute now under construction indicating that the employe's lien should reach back nine months, or to any indefinite period however remote, and supplant the lawfully acquired claims and rights of mortgagees or other lien holders, I have failed to perceive it. It was further expressly held, in the case last referred to, that the statute then in consideration did not contain any provision evincing an intention to make a preexisting mortgage lien subordinate to that of an assessment for benefits arising from the con-

struction of a ditch, and that without such a provision the court could not give the statute that construction. Just what language would be sufficient to manifest such an intention is not stated, nor do I believe that the mere fact that the claim for which a preference is asserted is that of a laborer or employe, will of itself give it such preference.

In *Warren* v. *Sohn,* 112 Ind. 213, the court but gave effect to the words of the statute giving miners who are employed in performing labor in mines a paramount lien over those of all other claimants except for taxes. I am not now disputing the proposition that a statute might not by its terms give the kind of a preference claimed in the present case, but what I do insist upon is that the law under construction does not give it.

When a lien is purely statutory, as is that claimed here, if any there be, it exists and must be controlled solely by the statute. *Cook* v. *State,* 101 Ind. 446; *Hanch* v. *Ripley,* 127 Ind. 151; Jones on Liens, section 105.

Even a mechanic's or materialman's lien only attaches as of the date when the mechanic first performs any labor or the materialman furnishes any material, and a preexisting mortgage lien cannot be subordinated to a mechanic's or materialman's lien so far as the realty is concerned upon which the building is erected which was placed there by the work of the mechanic, and in which the materials furnished are contained. As to the building itself, the lien is, of course, superior, and justly so, for the obvious reason that the labor and material have made the building what it is.

It is indeed difficult to discover any equity in the claim of appellee as compared with the right of the appellant or his grantor. When the appellee rendered

the services for which he asserts the lien in question, he had constructive notice of the mortgage and was bound by it, and must be presumed to have acted in view of such knowledge. Had the appellant's lien been contemporaneous with that of appellee, the case might be different, of course.

If the majority opinion is right, there is not a chattel in Indiana upon which it would be safe to take a mortgage for purchase money or any other debt; for who knows how soon the owner and his vendee may choose to put it to a use which will bring it within the operation of this statute and by reason of which any number of labor liens may attach to it? Nor am I able to perceive the force of the suggestion that the amount to which the laborer's lien is limited makes the right given a less dangerous one, for although the amount of one man's claim for labor is limited to $50.00, the number of claimants who may assert such a lien is as limitless as the sands of the sea.

It will not render the statute more just, nor improve the value of vested securities thus stricken down, to say that the mortgagee, or other lienholder besides the laborer, can take notice of the existence of this law at the time the security is taken. The property may certainly be put to uses in the future, of which at the time the security was accepted there was not the remotest indication nor prospect, and to say that whenever a chattel mortgage or other lien is given to secure a debt the lienholder must anticipate such extraordinary contingencies is, as it appears to me and as I think I have shown, to strike down vested rights and securities, and to inaugurate a system by which creditors will be driven to resort to other means of securing themselves than by those, or at least a portion of those, which have always existed for his benefit in the commercial and business world.

It must be remembered, too, that the lien here awarded the appellee, and for which a superiority is given over an older and naturally superior lien, attaches without any notice being given to hold the same upon the public records, and without a record of any kind being made thereof.

Moreover, if the lien here given is preferred to every other lien, there is nothing to hinder it from being preferred to a tax lien, and the State, county and municipality will all be superseded in their claims by the operation of this extraordinary statute. That the legislature has the power to enact such a law may be true, but I feel confident it has not done so in this particular instance.

For these reasons, among many others that might be mentioned, I cannot bring myself to agree with the prevailing opinion as to the meaning given this statute.

Ross, J., concurs in the views expressed in the dissenting opinion of Reinhard, J.