NEW BRUNSWICK TRUST COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18052. Promulgated June 28, 1949.

*Martin W. Meyer, Esq.*, for the petitioner.
*Rollin H. Transue, Esq.*, for the respondent.

1148

## OPINION.

HARLAN, *Judge*: The petitioner bases its contest on the determination of deficiency herein by virtue of the provisions of section 3798 (b) of the Internal Revenue Code.[1]   The respondent denies the applicability of that section to afford petitioner exemption from taxation during 1945, because of his contention that the petitioner's depositors did not acquire "a lien upon subsequent earnings of such bank or trust company."

It is respondent's contention that the only privilege which the depositors acquired by reason of accepting the preferred stock was a preferment in distribution of earnings if, as, and when such earnings were ordered applied to the claims of the stockholders by the directors of the bank.   We agree with respondent's contention.   There was no part of the future earnings of the bank set aside for the specific purpose of redeeming the preferred stock or paying interest thereon.   The directors of the bank were at perfect liberty to accumulate future earnings and build up a surplus to any amount deemed to the advantage of the bank.   They had full authority to use the earnings for the acquirement of a building site, equipment, or any other object deemed desirable within the provisions of the statutes of New Jersey.   Inasmuch as the bank was in a position to continue to use the $1,413,819.99 in its business of making loans at commercial rates and was only required to pay 1 per cent for the use of this money, any court would hesitate to interfere with the discretion of the directors, who were reviving a bank just emerging from insolvency, if those directors decided that it was to the bank's interest to continue to use the money,

---

[1] (b) Whenever any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has been released or discharged from its liability to its depositors for any part of their claims against it, and such depositors have accepted, in lieu thereof, a lien upon subsequent earnings of such bank or trust company, or claims against assets segregated by such bank or trust company or against assets transferred from it to an individual or corporate trustee or agent, no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company, such individual or corporate trustee or such agent, which shall diminish the assets thereof which are available for the payment of such depositor claims and which are necessary for the full payment thereof.

otherwise available to redeem the preferred stock at an expense of but 1 per cent, make substantial earnings thereon, and apply those earnings to build up surpluses and reserves.

It will at once be noticed that this situation clearly distinguishes the case at bar from *Clinton Trust Co.* v. *United States* (Ct. Cls.), 52 Fed. Supp. 671, upon which counsel for petitioner relies heavily. In that case, which is quite similar to the case at bar in many respects, the facts differed vitally from those in the case at bar in that the Clinton Trust Co. was compelled to set aside a specific fund amounting to 36 per cent of its earnings for the express purpose of redeeming the preferred stock and the Clinton Trust Co. was limited to the amount of the earnings that could be accumulated for the surplus fund to 10 per cent of the earnings, and this diversion was prohibited after the fund had reached 20 per cent of the capital stock. The depositors of the Clinton Trust Co. therefore not only had a preferment in the future earnings of the trust company, but they had an enforceable charge which they could, under the terms of their contract, compel the directors of the Clinton Trust Co. to honor. In the case at bar there is no specific fund set aside except to the extent that no dividends may be paid on the common stock out of all of the earnings until the preferred stock has been retired. We are unable to see any of the essential characteristics of an equitable lien resting with the depositors in the future earnings of the New Brunswick Trust Co.

The petitioner calls our attention to a provision in paragraph 5 of the stipulation to the effect that the assistant treasurer and the assistant secretary, together with some unnamed employees of the bank, solicited the depositors to sign the plan of reorganization and told the depositors that the plan would give them "a preference on all future earnings" of the bank. Assuming that these employees were speaking with the authority of the directors, their remarks could hardly be accepted to change the written provisions of the plan and of the preferred stock certificates. Even if so accepted, all that the employees promised was a "preference," which is exactly what they got as distinguished from an enforceable charge on the future earnings which would convert that preference into a lien. As distinguished from the oral statements of the bank employees, the pamphlet of questions and answers seems to make the power of the directors over the future earnings rather clear. Where the pamphlet answers the question as to the retirement of the preferred stock it says: "As soon as the remaining 50% of your deposit has been *made available*" the preferred stockholders would be paid, as had the unsecured depositors. However, the term "made available" clearly implies that an action by the bank officials would be necessary before the earnings could be applied to the retirement of the stock, which is exactly the reason behind the Commissioner's

contention that the depositors released their deposit claims for a preference and not for a lien.

An early and frequently quoted case defining an equitable lien is *Peck* v. *Jenness*, 48 U. S. 612. Therein the Court said:

> In courts of equity the term lien is used as synonymous with a charge or incumbrance upon a thing, where there is neither *jus in re*, nor *ad rem*, nor possession of the thing.

See also *The Poznan*, 9 Fed. (2d) 838; *Bell* v. *Heiner*, 44 N. E. 576.

However, we are persuaded that even if the question of the preferred stock conferring a lien on the depositors were not in this case, still the petitioner herein has not brought itself within the provisions of section 3798 of the code, because whatever right the depositors acquired by virtue of their acceptance of the preferred stock, be it a mere preference or an enforceable lien, such right was not accepted by the depositors "in lieu" of their claims against the bank. The authorities which are set forth in Words and Phrases (Perm. Ed.), vol. 21, p. 473, which seem to be in agreement, defined the term "in lieu of" as being synonymous with "instead of" or "in place of."

If it were true that the depositors herein did accept in the settlement a qualified lien on the future earnings of the company, the depositors also accepted a controlling interest in the bank itself, and from the record before us it is impossible for us to decide whether the depositors considered the receipt of the preferred stock, with its preference over future earnings, or the control of the bank, with its bright prospects for future earnings, to be of greater value. According to the wording of the published plan, the stockholders' committee believed that the reorganization would "result in a strong and safe Bank worthy of a prominent position in the affairs of our community." The question and answer pamphlet, in answering the question as to whether or not the common stock had any value, says: "While it now has only a potential value it will then [when the preferred stock is retired] have a real value." Even though the depositors might have considered their preferred stock of more value than their control of the entire bank, still it can not be said that the preferred stock was received "instead of" or "in place of" the depositors' claims, because the depositors received other and additional rights which we must consider in conjunction with the preferred stock as being "in lieu of," "instead of," and "in place of" their former rights as depositors.

This situation again clearly distinguishes the case at bar from *Clinton Trust Co.* v. *United States*, *supra*. In that case there could have been no question but that the preferred stock was received "in lieu" of depositors' claims, because the depositors received nothing of value except the preferred stock. The same situation does not exist in the case at bar.

As to the policy and purpose of section 3798 (b) of the code, we are in agreement with the statement in the opinion of the *Clinton Trust Co.* case which reads:

\* \* \* We recognize that the policy of the statute on which plaintiff bases its claim is that the United States does not, as a tax gatherer, desire to compete with the disappointed depositors of an insolvent bank, and that it is willing to defer the collection of its taxes in order to make available to such depositors money which, by certain arrangements with the other persons interested in the bank, has been set aside for the depositors. This Court said many years ago in *Johnston* v. *United States*, 17 Ct. Cl. 157, 171, that this remedial statute should be construed liberally and we agree.

However, it would be a far call from such purpose of the statute for the Government to relieve a bank from immediate taxation because its depositors had acquired a majority control of the bank. While the Government of the United States has expressed its willingness to defer taxation of funds which would result in depriving depositors of their own property, there is no basis on which it can be presumed that the Government would defer taxation on the earnings of a bank merely to advance the interest of the stockholders, even though those stockholders have been depositors. Our conclusion therefore is that the respondent is correct in his contention that the petitioner herein is not exempt from taxation because of the provisions of section 3798 (b) of the code.

Since from the stipulation it appears that the petitioner has made a payment on the tax and that a computation will be necessary, and at the request of the parties,

*Decision will be entered under Rule 50.*