**FIRST NATIONAL BANK OF INDIANA, Appellant (Defendant Below),**

v.

**David GABONAY, James Greenwell, Steve Young, Daniel Russell, Thomas Marlett, James Jent, James Robinson, Donald Whitehead, Jimmie Owens, Gary Gilmore, Scott Roark, Michael Russell, James Estes, Bobby Whitt, Steven Jent, Mike Russell, Dewey Stinson, and Steven Webster, Appellees (Plaintiffs Below).**

No. 20S04–9011–CV–724.

Supreme Court of Indiana.

Nov. 13, 1990.

James R. Byron, James H. Milstone, Thorne, Grodnik & Ransel, Elkhart, for appellant.

William R. Groth, Fillenwarth Dennerline Groth & Baird, Indianapolis, for appellees.

SHEPARD, Chief Justice.

When an employer's business is suspended by creditors, employees who are owed wages have a limited preferred debt pursuant to Ind.Code § 22–2–10–1 (West 1981). The issue in this case is whether that preferred debt takes priority over a mortgage on real estate and a security interest in accounts receivable and other personal property. We hold that it does.

Plaintiffs were employees of Gratzol & Nicodemus Roofing and Sheet Metal Co., Inc. (Gratzol). First National Bank (Bank) held a mortgage on Gratzol's real estate and a security interest in the company's accounts receivable, personal property, and after-acquired assets. On October 23, 1987, the Bank seized all assets of Gratzol under the terms of the mortgage and security agreements, and Gratzol ceased to operate.

On December 2, 1987, eighteen of Gratzol's employees filed a complaint demanding payment from the Bank for "wages and fringe benefit contributions owed them up to $600 per employee, earned in the three (3) months preceding defendant

Bank's seizure of Gratzol's property and possessions." Record at 7. The employees sought this payment under the terms of Ind.Code § 22–2–10–1, which provides that

the debts owing to laborers or employees, which have accrued by reason of their labor or employment to an amount not exceeding six hundred dollars ($600) to each employee, for work and labor performed within three (3) months next preceding the seizure of such property, shall be considered and treated as preferred debts and such laborers or employees shall be preferred creditors and shall be first paid in full.

Upon cross motions for summary judgment, the trial court held that the Bank's liens based on real estate mortgages perfected prior to July 23, 1987, took priority over the claims of employees, but that the claims of employees took preference over the Bank's seized security interest in the personal property. On appeal, the Bank asserted that its secured interests in the personal property *and* the real estate should take priority over the claims of employees. The employees countered that their claims should have priority over both of the Bank's security interests. The Court of Appeals held for the Bank with respect to both real and personal property interests. *First Nat'l Bank of Indiana v. Gabonay* (1989), Ind.App., 545 N.E.2d 1130. We grant the employees' petition to transfer.

This case is governed by our holding in *Small v. Hammes* (1901), 156 Ind. 556, 60 N.E. 342. In *Small,* the defunct firm, a publishing company, was seized by its creditors, holders of a chattel mortgage on the firm's machinery. The employees sued the creditors for up to $50 each in unpaid wages due under "the act of March 17, 1885 (Acts 1885, p. 95), § 7051 Burns 1894"[1] [hereinafter ch. III, § 1]. This was the predecessor statute to § 22–2–10–1. This Court held:

The meaning of the statute is unmistakable. Its evident intention is to provide for the payment, to the extent of $50, of

the claims of wage earners out of the proceeds of the sale of the property of the employer, whose business has been suspended by the action of creditors, *before the payment of any other claims, costs excepted, whether secured by lien or otherwise.* Such statutes are said to be founded upon the broadest equity, and are for the protection of a peculiarly helpless and meritorious class of creditors, whose claims are usually small, and who are suddenly compelled to shift for themselves by the failure of their employer. If the statute does not, in terms, create a specific lien upon the property of the employer, it accomplishes the same result by securing to the employe *priority of payment over all other claimants* out of the proceeds of the property of the employer. The effect of the statute, as we construe it, is to give the appellees [employees] the right to priority of payment over the appellant [mortgagee], and to make the claim of the employes *superior to the rights of the appellant under the mortgages executed.*

156 Ind. at 560–61, 60 N.E. at 343 (emphasis added). Essentially, we concluded that the legislature intended to give employees first priority, limited only by time and amount, to the proceeds of a defunct employer as defined by the terms of the statute. This Court's decision in *Small* was consistent with an earlier declaration by the Appellate Court:

When the mortgagee accepted his mortgage, he must be deemed to have done so with knowledge that if the business was continued, and the contingency contemplated by the statute should occur, then the labor debts would be preferred and must be first paid. The law entered into the mortgage contract as a silent but potent factor, and the mortgagee accepted it subject to such rights as might accrue to others under the law.

*Bell v. Hiner* (1896), 16 Ind.App. 184, 187–88, 44 N.E. 576, 577.

---

1. 156 Ind. at 560, 60 N.E. at 343. This was an unofficial citation for 1885 Ind. Acts 95, 95, ch. III, § 1 (Spec.Sess.).

The current version of the statute limits the employee's protection to $600 earned within the three months preceding the seizure of the employer's property. With these changes, the holding of *Small* remains the law of Indiana. Although only a chattel mortgage was at issue in *Small*, there is no evidence in either past or present versions of the statute that the legislature intends any distinction to be made between an employer's real and personal property. We therefore apply the holding of *Small* to real property as well as personal property. The claims of employees, for up to $600 each earned in the three months prior to the closing of their employer's firm by the action of its creditors, take priority over both a mortgage on real property and a security interest on accounts receivable, personal property, and after-acquired assets, irrespective of the date of perfection of the mortgage or security interest.

The Bank argues that the present case is not controlled by *Small* but rather by this Court's ruling in *McDaniel v. Osborn* (1905), 166 Ind. 1, 75 N.E. 647. In *McDaniel*, this Court construed "§ 7058 Burns 1901, Acts 1885, p. 36, § 3" [2] [hereinafter ch. XXI, § 3]. We concluded it did not grant a prior lien to employees over mortgaged real property, but instead gave employees merely a "preferred debt" which took precedence over general creditors only.

A careful reading of the cases shows that *McDaniel* was construing a completely distinct statute which was *not* a predecessor to Ind.Code § 22-2-10-1. The employees in *McDaniel v. Osborn* brought suit under ch. XXI, § 3 which stated in full:

All debts due any person for manual or mechanical labor shall be a preferred claim in all cases against any individual, co-partnership, corporation or joint stock company where the property thereof shall pass into the hands of an assignee or receiver, and such assignee or receiver in the distribution and payment of the

debts shall be required to first pay in full all debts due for manual or mechanical labor before paying any other, except the legitimate costs and expenses.

In contrast, the statute in *Small*, predecessor to the current statute, stated:

Hereafter, when the property of any company, corporation, firm or person, engaged in any manufacturing, mechanical, agricultural or other business or employment, or in the construction of any work or building, shall be seized upon any mesne or final process of any Court of this State, or where their business shall be suspended by the action of creditors or put into the hands of any assignee, receiver or trustee, then in all such cases the debts owing to laborers or employes, which have accrued by reason of their labor or employment *to an amount not exceeding fifty dollars to each employe, for work and labor performed within six months next preceding the seizure of such property*, shall be considered and treated as preferred debts and such laborers or employes shall be preferred creditors and shall be first paid in full, and if there be not sufficient to pay them in full then the same shall be paid to them *pro rata*, after paying costs.

Ch. III, § 1 (emphasis added). That there is a material difference between these two statutes has been noted by our courts since at least 1890. *See, e.g., Stoy v. O'Dell's Estate* (1935), 100 Ind.App. 407, 409, 196 N.E. 132, 133; *Eversole v. Chase* (1890), 127 Ind. 297, 299, 26 N.E. 835, 835–36.

In construing ch. XXI, § 3, the *McDaniel* court chose not to follow *Small*'s finding of an inferred statutory lien in ch. III, § 1 for a single, express reason:

If such a result is within the meaning and intent of the statute [ch. XXI, § 3], then, in case of an employer's insolvency, *labor claims in amount unlimited, and bounded in time only by the statute of limitations*, may be enforced against his estate to the displacement and exclusion of debts of unquestioned validity....

---

**2.** 166 Ind. at 4, 75 N.E. at 648. This was an unofficial citation for 1885 Ind. Acts 36, 37, ch.

XXI, § 3.

*McDaniel v. Osborn,* 166 Ind. at 6–7, 75 N.E. at 649 (emphasis added). The statute of *McDaniel* had no constraints on the amount of money employees could collect, and it had no time limits serving to limit the priority of employees' claims. Eventually, ch. XXI, § 3 was held unconstitutional by this Court. *McErlain v. Taylor* (1934), 207 Ind. 240, 192 N.E. 260 (statute's unlimited preference for "manual and mechanical" labor is unconstitutional as arbitrary and capricious classification).

The principles of statutory construction which led to the decision in *McDaniel* have not changed. "Where a statute is susceptible to more than one interpretation, however, the court may consider the consequences of a particular construction." *Flynn v. Klineman* (1980), Ind.App., 403 N.E.2d 1117, 1121. Our objective in statutory construction is to determine and effect the intent of the Legislature. We attempt to prevent absurdity and hardship and to advance the public convenience. *Walton v. State* (1980), 272 Ind. 398, 398 N.E.2d 667.

Foreshadowing the decision in *McErlain,* the *McDaniel* court chose to avoid absurdity in ch. XXI, § 3 by declining to grant an *unlimited* lien to employees over their employers' property, when it was not clear that the legislature ever intended such an extensive lien. In contrast, cases construing the predecessors to Ind.Code § 22–2–10–1 recognized that the legislature in fact did expect that employees' "preferred debt," severely limited as to time and amount, would take absolute priority over everything except costs. *See, e.g., Small v. Hammes,* 156 Ind. at 560–61, 60 N.E. at 343; *Bell v. Hiner,* 16 Ind.App. 184, 44 N.E. 576; *Bass v. Doerman* (1887), 112 Ind. 390, 14 N.E. 377.

Because of the differences in the two statutes, the *McDaniel* Court properly "disapproved" of using the *Small* and *Bell* analysis of "preferred debt" in construing the *McDaniel* statute. 166 Ind. at 5, 75 N.E. at 649. Just as *Small* and *Bell* were not precedent for interpreting the statute at issue in *McDaniel, McDaniel* has no relevance to the case at bar.

The opinion of the Court of Appeals is vacated. We affirm the judgment of the trial court in part and reverse in part. We remand with instructions to enter summary judgment for the employees as to both real and personal property.

DeBRULER and DICKSON, JJ., concur.

GIVAN and PIVARNIK, JJ., dissent without opinion and would deny transfer.